In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2563

United States of America,

Plaintiff-Appellee,

v.

Donald Behrman,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:99CR30042-002--William L. Beatty, Judge.

Argued November 9, 2000--Decided December 22, 2000

  Before Fairchild, Easterbrook, and Manion, Circuit
Judges.

  Easterbrook, Circuit Judge.  After pleading guilty
to four counts of bank fraud, see 18 U.S.C.
sec.1344, Donald Behrman was sentenced to 15
months' imprisonment plus $611,438.41 in
restitution to the banks he hoodwinked. By
pleading guilty Behrman waived any potential
challenge to all pre-plea events, and the plea
agreement adds a waiver of both appeal and
collateral attack concerning the sentence,
provided that the punishment is within the
statutory maximum. Nonetheless Behrman has
appealed, contending that the restitution is
excessive.

  Paragraph 8 of the plea agreement reads:

The Defendant is aware that Title 18, United
States Code, Section 3742 affords a defendant the
right to appeal the sentence imposed.
Acknowledging all this, the Defendant knowingly
waives the right to appeal any sentence within
the maximum provided in the statute(s) of
conviction (or the manner in which that sentence
was determined) on the grounds set forth in Title
18, United States Code, Section 3742 or on any
ground whatever, in exchange for the concessions
made by the United States in this plea agreement.
The Defendant also waives his right to challenge
his sentence or the manner in which it was

determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255.

The "concessions made by the United States" in exchange for Behrman's plea and waiver were substantial. A stipulation of facts accompanying the plea agreement reveals that Behrman and his father Theodore defrauded five banks, over extended periods, by selling assets in which the banks had security agreements. The banks financed the family's used-car business, lending against the security of titles to the cars. Behrman sold many of the cars without repaying the borrowed money. Banks were not the only losers. Behrman's Garage and Sales, Inc., did not file corporate tax returns, or pay federal taxes, for the calendar years 1995, 1996, 1997, and 1998. Behrman himself did not file tax returns, and evaded his personal tax obligations, for 1994, 1995, 1996, 1997, and 1998. By pleading guilty Behrman avoided criminal prosecution for these tax offenses, which if pursued would have produced a sentence substantially exceeding the 15-month term he received.

Although the prosecutor has fulfilled the United States' part of the bargain, Behrman says that he need not keep his promise to refrain from appealing because he seeks to present a constitutional argument in support of reversal. The restitution order, Behrman contends, violates the due process clause of the fifth amendment because it is inadequately supported by the facts and because the basis of the restitution order was not established to a jury's satisfaction beyond a reasonable doubt. See Apprendi v. New Jersey, 120 S. Ct. 2348 (2000). Behrman points to cases saying that particular plea agreements do not waive constitutional arguments. E.g., Jones v. United States, 167 F.3d 1142, 1144 (7th Cir. 1999); United States v. Woolley, 123 F.3d 627, 632 (7th Cir. 1997); United States v. Schmidt, 47 F.3d 188, 190 (7th Cir. 1995). Some constitutional theories--particularly claims that the plea agreement was involuntary or the result of ineffective assistance of counsel--concern the validity of the plea agreement and thus would knock out the waiver of appeal along with the rest of the promises; all terms stand or fall together. United States v. Wenger, 58 F.3d 280 (7th Cir. 1995). But Behrman does not contend that his plea is invalid and does not want a trial; he seeks to retain the prosecutor's concessions while having an appeal too. Yet each side's concessions are linked to the other's; while the agreement is in force, a defendant must keep all of the promises he made. To create a general "constitutional-argument exception" to waivers in plea agreements would be to reduce the

concessions defendants could obtain for their promises, because it would reduce the number of (enforceable) promises defendants could make. Because almost every argument in a criminal case may be restated in generic constitutional form (as Behrman has done), a "constitutional-argument exception" would vitiate most waivers of appeal and all waivers of collateral attack. Yet we held in Wenger, and have reiterated many times since, that voluntary waivers of appeal are valid and enforceable.

Behrman's contention that all constitutional arguments always may be presented despite promises made in plea agreements (and no matter what the agreement says) is impossible to reconcile with cases such as Bousley v. United States, 523 U.S. 614 (1998), United States v. Broce, 488 U.S. 563 (1989), and Mabry v. Johnson, 467 U.S. 504, 508 (1984), which hold that by pleading guilty defendants waive all objections-- including constitutional objections-- to their convictions. Only arguments that would nullify the plea itself survive. If a voluntary guilty plea may waive a basket full of potential constitutional objections to searches and seizures, confessions, and the validity of the indictment and prosecution (including claims under the double jeopardy clause that logically would preclude any sentence), it is impossible to see why a voluntary plea agreement may not waive constitutional objections to the particular sentence imposed. Plea agreements may preserve some (or all) constitutional arguments, concerning the conviction as well as the sentence, see Fed. R. Crim. P. 11(a)(2), but Behrman's does not reserve any identified theory for appeal. To the contrary, this agreement surrenders the right to present "any ground whatever" in support of an appeal challenging "any sentence within the maximum provided in the statute(s) of conviction".

Constitutional grounds are included in "any ground whatever". Still, the agreement waives the right to appeal only if $611,000 in restitution is a "sentence within the maximum provided in the statute(s) of conviction". There is a difference between the "statute of conviction"--which is to say 18 U.S.C. sec.1344--and the entire Criminal Code. Section 1344 provides that a person convicted of bank fraud "shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." It does not mention restitution. What does authorize restitution is 18 U.S.C. sec.3663(a), and because Behrman's crime entailed fraudulent deprivation of property the judge was required by sec.3663A to provide for complete restitution. See sec.3663A(c)(1)(A)(2). Because the agreement waives appeal only with respect to fines and imprisonment, and not with respect to

restitution, Behrman is entitled to present any kind of argument--procedural, statutory, or constitutional. An agreement waiving appeal from "any sentence within the maximum provided in Title 18" or similar language would foreclose the arguments Behrman now presents, but, just as we are willing to enforce waivers of appeal, we enforce them only to the extent of the agreement.

One final argument based on waiver remains. Restitution is due to the "victim" of the offense, defined by sec.3663A(a)(2) as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered". See also 18 U.S.C. sec.3664(e). We understand this language to refer to harm directly caused by the offense of conviction; more diffuse estimates of loss may be appropriate for purposes of relevant conduct under the Sentencing Guidelines, but restitution tracks "the recovery to which [the victim] would have been entitled in a civil suit against the criminal". United States v. Martin, 195 F.3d 961, 968 (7th Cir. 1999). But sec.3663A(a)(3) permits the defendant to undertake additional restitution obligations via a plea agreement, and the United States contends (in effect though not explicitly) that Behrman did this, waiving the benefits of sec.3663A(a)(2) and the holding of Martin.

Concurrently with the plea agreement, the parties entered into a stipulation of facts. Paragraph 8 of this stipulation, which also appears as para.3 n.1 of the plea agreement, contains this language (boldface in original):

The loss to the victim banks was caused by a number of factors in this case, not all of which can be proven to be attributable to the fraudulent conduct of the defendants [Behrman and his father]. Therefore the actual loss for restitution purposes is greater than the guideline "valuation of loss" for sentencing purposes. The F.B.I. investigation has revealed to date that $243,894 of the total loss to the victim banks can be substantiated as attributable to the fraud or misrepresentations of the defendants. For restitution purposes the victims report the following losses [bank-by-bank details omitted]; which totals to a total loss for restitution purposes of $602,997.85.

This appears to get things backward, implying that difficulty of proving loss means that restitution will exceed "loss" for purposes of the loss table under the Guidelines. Oddly, the parties make nothing of this glitch. The prosecutor reads para.8 as an undertaking to pay $603,000 in restitution, even though that amount may exceed the direct and proximate harm from the

offense of conviction. But it would be unsound to read this stipulation as a promise to pay $603,000 in restitution. Paragraph 8 does not consent to the imposition of any particular penalty. Instead it stipulates that "the victims report the following losses. . ." (emphasis added). Whether those losses are amounts that should be included as restitution under the sentence is a question reserved (at least, not resolved) by the stipulation of facts and plea agreement. Paragraph 7 of the plea agreement adds, apparently referring to all elements of the sentence: "Defendant expressly recognizes that the final calculation will be determined by the Court after considering the Presentence Report, the views of the parties and any evidence submitted prior to sentencing" (underlining in original). Nothing here or elsewhere in the plea agreement undertakes to make restitution in excess of the amount required by sec.3663A.

Misunderstanding the effect of para.8, and without carrying out the inquiry required by sec.3663A(a)(2) and Martin, the district judge directed Behrman to pay as restitution whatever sums the victim banks claimed as their losses from all dealings with Behrman's Garage and Sales. Something more than $244,000 may be appropriate as restitution, for the FBI's preliminary conclusions do not necessarily reflect the full consequences of the fraud, but before directing Behrman to pay more than that figure the district court must carry out the inquiry and make the findings required by the statute and our opinions interpreting sec.3663A. One important question, so far unaddressed in this case, is whether the banks' losses on credit that they extended to the Behrmans' customers is the sort of harm for which restitution is available under sec.3663A. Compare United States v. Menza, 137 F.3d 533, 537 (7th Cir. 1998), with United States v. Hensley, 91 F.3d 274, 277 (1st Cir. 1996) (broaching the question whether Hughey v. United States, 495 U.S. 411 (1990), applies to restitution orders in light of post-Hughey amendments).

Neither side gave the topic much thought in the district court, perhaps because no one anticipates that Behrman will be able to pay even $244,000. He is represented by a public defender, and his economic prospects are not bright. But the difference between $244,000 and $603,000 (or $611,000) could matter if Behrman acquires substantial legitimate income. This restitution obligation, which like a civil fraud judgment cannot be discharged in bankruptcy, see 11 U.S.C. sec.523(a)(2)(A), (a)(13), will dog Behrman for life unless it is paid, so the case is not moot.

According to Behrman, even $243,000 is too high unless a jury finds the essential facts beyond a reasonable doubt. But like most recent arguments invoking Apprendi, this contention depends on a misunderstanding of that case. Behrman treats it as fundamentally changing the law of criminal sentencing, so that every fact affecting punishment must be treated as an "element of the offense," with all that implies in criminal law. Yet that is not how the Supreme Court described its decision. What Apprendi holds is: "Other than the fact of a criminal conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S. Ct. at 2362-63. Thus the first question is whether restitution is a "penalty for a crime," a question that has already been answered "no" in this circuit because restitution for harm done is a classic civil remedy. See United States v. Szarwark, 168 F.3d 993, 998 (7th Cir. 1999). Congress required judges to include this remedy in a criminal judgment to avoid the need for the victims of crime to file separate civil suits-- litigation that, given the preclusive effect of the criminal judgment, would have an inevitable outcome. A civil remedy included with a criminal judgment does not make it a "penalty for a crime" that must be established beyond a reasonable doubt; otherwise it would not be possible to apply the law of preclusion (or grant summary judgment) in an ordinary civil suit seeking restitution. It follows that Apprendi does not affect the calculation of restitution.

What is more, sec.3663A does not include a "statutory maximum" that could be "increased" by a given finding. Section 3663A is in this respect like a statute that permits the judge to impose any term of years up to life in prison. When sentencing under such a statute, we held in United States v. Smith, 223 F.3d 554, 564-66 (7th Cir. 2000), the judge may make any appropriate findings by a preponderance of the evidence. Put otherwise, Apprendi does not affect the operation of the Sentencing Guidelines; it is limited to situations in which findings affect statutory maximum punishment. See Talbott v. Indiana, 226 F.3d 866, 869-70 (7th Cir. 2000). Even if matters were otherwise, however, Behrman could not benefit. Section 1344 authorizes a financial penalty up to $1 million, and Behrman has no interest in whether this is called a "fine" or "restitution." (This is not to say that restitution is capped at $1 million, but only that, if restitution does not exceed the authorized fine, then a defendant cannot complain even if the Supreme Court should eventually disagree with our understanding of Apprendi and the holding in Szarwark.) Finally, a defendant

who has pleaded guilty, and thus surrendered his entitlement to a jury trial, is in no position to contend that any particular issue should have been submitted to a jury. Thus all the genuine issues in this case are statutory, and on remand the district court may apply sec.3663A without modification in light of Apprendi.

The portion of the sentence specifying restitution is vacated, and the case is remanded for proceedings consistent with this opinion.