In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3940

United States of America,

Plaintiff-Appellee,

v.

Chemetco, Incorporated,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99 CR 30048--William D. Stiehl, Judge.

Argued April 20, 2001--Decided December 17, 2001


   Before Easterbrook, Manion, and Kanne,
Circuit Judges.

   Kanne, Circuit Judge.  Defendant
Chemetco, Inc. pleaded guilty to
violating the Clean Water Act, 33 U.S.C.
sec. 1311(a). Accordingly, the district
court sentenced Chemetco to pay a fine
that was based on the number of days that
it violated the Clean Water Act. Chemetco
now appeals its sentence, arguing that
the district court misinterpreted the
Clean Water Act and that the district
court's findings violated the rule set
forth in Apprendi v. New Jersey, 530 U.S.
466, 120 S. Ct. 2348, 147 L. Ed. 2d 435
(2000).

I.  History

   Section 301 of the Clean Water Act
("CWA") provides that it is unlawful for
any person to discharge a pollutant
unless in compliance with the CWA. See 33
U.S.C. sec. 1311(a). A person achieves
such compliance by obtaining a National
Pollutant Discharge Elimination System
("NPDES") permit from the United States
Environmental Protection Agency ("U.S.
EPA") or from a qualified state agency.
See id. at sec. 1342.

   Chemetco smelts scrap metal at a foundry
located near Hartford, Illinois in order
to recover copper and other valuable

products. On September 12, 1986, the Illinois Environmental Protection Agency ("Illinois EPA") issued Chemetco a permit allowing construction and operation of a storm- water runoff control system. Later that month, contract laborers hired by Chemetco installed this system, and pursuant to Chemetco's instructions, also installed a secret pipe on Chemetco's property running to an unnamed ditch tributary. The contract laborers then covered exposed sections of this secret pipe with straw. This secret pipe did not appear in any blueprint or drawing kept by Chemetco, and Chemetco did not have a permit allowing it to discharge pollutants via this pipe. Chemetco used this secret pipe to discharge water containing toxic metals such as lead and cadmium until September 18, 1996, when U.S. and Illinois EPA agents witnessed the secret pipe discharging polluted water.

Chemetco and six of its managers were indicted in the United States District Court for the Southern District of Illinois on April 21, 1999. Count I of the indictment charged Chemetco and various managers with conspiring to violate the CWA. Count II charged Chemetco and various managers with knowingly violating Section 301 of the CWA "[f]rom on or about September 1986 to on or about September 18, 1996." Finally, Counts III and IV of the indictment charged Chemetco and various managers with making false statements to government officials.

On January 11, 2000, Chemetco pleaded guilty to Counts I and II and nolo contendere to Counts III and IV. Chemetco also stipulated to the facts underlying the plea and waived its right to a jury trial. In the plea agreement, Chemetcoacknowledged discharging pollutants via the secret pipe during at least some of the time period alleged in the indictment. Chemetco also acknowledged that the government would recommend the imposition of a fine for Count II based on the number of days that the violation occurred. Section 309(c)(2) establishes criminal penalties for knowing violations of Section 301 of the CWA: "Any person who . . . knowingly violates [Section 301] . . . shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of

violation, or by imprisonment for not more than 3 years, or by both." 33 U.S.C. sec. 1319(c)(2)(B)./1 The district court then referred the matter to the probation office for pre-sentence investigation and asked counsel to prepare sentencing memoranda.

Chemetco filed its sentencing memorandum on February 15, 2000, in which it averred that both parties agreed that under Section 309 of the CWA, Chemetco was liable for a fine of $2,500 to $25,000 per day of violation before February 4, 1987, and for a fine of $5,000 to $50,000 per day of violation thereafter. Chemetco then noted that the only disputed issue was the number of days that the violation occurred, and that the district court would resolve this issue at a hearing on March 13, 2000. Chemetco claimed that at this hearing, the government would have to prove the number of days that the violation occurred by "clear and convincing evidence." Chemetco attached tables showing rainfall statistics and explained that the amount of rainfall would affect the number of days on which the secret pipe discharged polluted water. These tables also calculated possible fine ranges based on the rainfall statistics. The tables indicated that there had been 948 days of rain between September, 1986 and September, 1996. However, Chemetco stated that "[i]t may . . . be impossible to determine [on] how many days an actual discharge occurred."

The government also filed its sentencing memorandum on February 15, 2000. The government recommended fining Chemetco for 949 days of violation--948 days when it rained plus one day, September 18, 1996, when although it did not rain, U.S. and Illinois EPA agents witnessed the se cret pipe discharging polluted water.

On March 13 and 14, 2000, the district court held a hearing to determine the violation days. The government maintained that the secret pipe discharged polluted water on the 949 days indicated in its sentencing memorandum. Chemetco countered that there were fewer days of violation because the secret pipe did not discharge polluted water on every day that it rained. In support of this contention, Chemetco's expert witness, Kim Fock, presented two alternative methodologies

for calculating the number of days that the secret pipe discharged polluted water. Further, Chemetco employees testified that the secret pipe could not have discharged polluted water on every day that it rained because on certain occasions during the ten-year period charged in the indictment, the valve to the secret pipe was closed.

With the district court's leave, Chemetco filed a supplemental sentencing memorandum on March 22, 2000, in which it argued that there were seventy-one days of violation, yielding a fine range of $342,500 to $3,425,000. On May 18, 2000, the probation office issued its pre-sentence report ("PSR"), in which it discounted Chemetco's calculation and concluded that there were 826 days of violation, yielding a fine range of $4,077,500 to $40,775,000. Chemetco filed its first objection to the PSR on June 9, 2000, disputing the methodology that the probation office used to calculate the number of days of violation. The probation office responded by filing an addendum to the PSR on June 28, 2000, in which it concluded that there were 711 days of violation, yielding a fine range of $3,502,500 to $35,025,000.

On August 3, 2000, Chemetco filed a second objection to the PSR. Citing the Supreme Court's recent decision in Apprendi, 530 U.S. at 477, Chemetco claimed that it had to "be charged [in the indictment] with each day of violation" and that the number of days of violation had to "be proven [by the government] beyond a reasonable doubt." In an order dated October 26, 2000, the district court rejected Chemetco's Apprendi objection. The district court found that the indictment, which charged Chemetco with violating the CWA "[f]rom on or about September 1986 to on or about September 18, 1996," was sufficient given that it informed Chemetco of the charges and put Chemetco on notice of the potential maximum penalty--the penalty that the CWA would allow if Chemetco discharged pollutants every day during the period that the indictment identified. Further, the district court found that Apprendi did not apply to this case and, therefore, the number of days of violation under the CWA was a sentencing factor that the court could find by a preponderance of the evidence.

The district court held a sentencing hearing on October 30, 2000. At that hearing, the district court found, by a preponderance of the evidence, that there were 676 days of violation, resulting in a fine range of $3,327,500 to $33,275,000. The district court sentenced Chemetco to a fine of $3,327,500 on Count II, and Chemetco now appeals this sentence.

## II. Analysis

The issue in this case is whether the number of days that Chemetco violated the CWA is an element of a CWA offense or a sentencing factor. Due process requires that the government prove each element of an offense beyond a reasonable doubt. See Apprendi, 530 U.S. at 477. After the government has met this burden and an offender is found guilty of a crime, however, courts can apply sentencing factors based on a preponderance of the evidence in order to increase the offender's punishment. See Almendarez-Torres v. United States, 523 U.S. 224, 228, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998). Thus, whether the number of days that Chemetco violated the CWA is an element of a crime or a sentencing factor is important because if the number of violation days belongs in the former category, then it was reversible error for the district court to calculate it based on a preponderance of the evidence. See Apprendi, 530 U.S. at 490.

The Supreme Court has ruled that, within certain constitutional limits, Congress can identify which factors are elements of a crime and which are sentencing factors. See id. at 485-90. Therefore, our first inquiry is statutory--whether in drafting the CWA, Congress intended the number of days of violation to be an element of a CWA offense or a sentencing factor. See Almendarez-Torres, 523 U.S. at 228. If we answer that question in the affirmative, our next inquiry is whether treating the number of violation days as a sentencing factor comports with the constitutional limits elucidated in Apprendi.

## A. Standard of Review

We agree with both parties that we should assess Chemetco's constitutional

argument--the application of Apprendi to this case--de novo. See, e.g., United States v. Bhutani, 266 F.3d 661, 668 (7th Cir. 2001) (questions of law reviewed de novo). However, the parties dispute which standard of review should apply to Chemetco's statutory argument. Chemetco urges us to apply de novo review because it timely objected to the PSR, stating that the district court's procedures ran afoul of Apprendi. Nevertheless, the government argues that because Chemetco only objected to the PSR on constitutional grounds and not on statutory grounds, we should review Chemetco's statutory argument under the plain error standard. See, e.g., United States v. Nance, 236 F.3d 820, 824 (7th Cir. 2000). Chemetco responds that its Apprendi objection preserved its statutory argument because inherent in every Apprendi objection is a claim of improper statutory construction. Because the result would be the same under the stricter de novo standard of review, we need not address whether an Apprendi objection preserves a claim of improper statutory construction.

B.  Clean Water Act

In order to determine whether Congress intended the number of violation days to be a sentencing factor or an element of a crime, we first look at the language of the statute. See United States v. Hayward, 6 F.3d 1241, 1245 (7th Cir. 1993). When the language of a statute is clear and unambiguous, we must give effect to its plain meaning unless doing so would "thwart the purpose of the overall statutory scheme." See id. Section 301 prohibits discharging a pollutant without an applicable permit. See 33 U.S.C. at sec. 1311(a). Those who "knowingly" commit this violation "shall be punished" under the terms set forth in Section 309(c)(2). Id. at sec. 1319(c)(2). Section 309(c)(2) of the CWA provides that: "Any person who . . . knowingly violates [Section 301] . . . shall be punished by a fine of not less than $5,000 nor more than $50,000 per day of violation, or by imprisonment for not more than 3 years, or by both." Id. at sec. 1319(c)(2) (emphasis added). Section 309(c)(2)'s "shall be punished by" clause indicates that the language following it sets forth the terms of punishment for a CWA violation. See United States v. Colt, 126 F.3d 981, 982 (7th Cir. 1997). The

terms of punishment for a CWA violation include a fine that depends on the number of days of violation.

The "per day of violation" language qualifies this term of punishment. This language indicates that there is a "violation" that is defined elsewhere in the CWA, and that the punishment one receives for this violation depends on the number of days that the violation occurred. Thus, the number of days that the violation occurred is a factor to be determined after a "violation" has been established. Therefore, the plain meaning of Section 309(c)(2)'s language expresses Congress's unambiguous intent.

Because the language of Section 309(c)(2) is unambiguous, we must give effect to it if doing so is consistent with the overall statutory scheme of the CWA. See Hayward, 6 F.3d at 1245. CWA's statutory scheme is clear: Section 301 and other sections define what constitutes a violation/2 and Section 309 establishes penalties for these violations. See Kelly v. United States E.P.A., 203 F.3d 519, 521-22 (7th Cir. 2000). Indeed, Section 309 is entitled "Enforcement" and sub-section 309(c) is entitled "Criminal penalties." 33 U.S.C. at sec. 1319. While it is true that statutory titles are not definitive guides to statutory meaning, they are relevant. See Almendarez-Torres, 523 U.S. at 234. Because the clear and unambiguous language of Section 309(c)(2) comports with the overall statutory scheme of the CWA, we hold that Congress intended the number of violation days to be a sentencing factor and not an element of a CWA offense.

Chemetco argues that Congress intended to make the number of violation days an element of a CWA offense or alternatively, that Congress intended that each day of violation be charged as a separate CWA offense. Chemetco's reliance on the Supreme Court's decision in Castillo v. United States, 530 U.S. 120, 120 S. Ct. 2090, 147 L. Ed. 2d 94 (2000) for the proposition that the number of violation days is an element of a CWA offense is misguided. The Supreme Court held that although the language of 18 U.S.C. sec. 924(c)(1) was ambiguous, the structure of the statute clarified Congress's intent to create a new element

of a separate offense. See id. at 124-25. The facts in the present case are distinguishable because unlike the language and structure of 18 U.S.C. sec. 924, the CWA's language is unambiguous and Section 309(c)(2) is an integral part of the CWA's penalty structure.

Chemetco's reliance on a district court case from Pennsylvania, United States v. Oxford Royal Mushroom Prods., Inc., 487 F. Supp. 852, 856 (E.D. Pa. 1980), for the proposition that each day of violation is a separate offense is also misguided. The court in Oxford considered a motion to dismiss an indictment under the multiplicity doctrine, which prevents the government from charging a single offense in several counts, because the government charged individual days of violation under the CWA rather than a single crime. See id. The district court denied the motion because it realized that whether the indictment charged the defendants with the days of violation separately or with a single course of conduct made no real difference because the CWA directs punishment for each day of violation. See id. Therefore, all Oxford shows is that the indictment here could have charged Chemetco for each individual day of violation without being defective, not that it had to charge individual days separately. See id.

Moreover, the plain language of the CWA contradicts the argument that each day of violation is a separate offense. Section 309(c)(2) allows district courts to impose fines "per day of violation," thereby implying that violations may span more than one day. 33 U.S.C. sec. 1319(c)(2). Given that generally "a court should not construe a statute in a way that makes words or phrases meaningless . . . or superfluous," United States v. Franz, 886 F.2d 973, 978 (7th Cir. 1989), Chemetco's argument is unavailing. Furthermore, Chemetco's interpretation of the CWA would subject it to a prison term of 2,028 years--three years for each of its 676 CWA violations--and we cannot accept that Congress intended this interpretation of the CWA.

C.  Apprendi

Even though Congress intended the number of violation days to be a sentencing

factor, Chemetco argues that its sentence violated the rule announced by the Supreme Court in Apprendi. In that case, the Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be . . . proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490 (emphasis added).

Despite Chemetco's assertions, Apprendi is inapplicable because the CWA does not have a prescribed statutory maximum penalty. See United States v. Behrman, 235 F.3d 1049, 1054 (7th Cir. 2000). In Behrman, 235 F.3d at 1052, the defendant, charged with bank fraud, entered into a plea in which he agreed to pay $611,000 in restitution to the victim banks as part of his sentence, as authorized by 18 U.S.C. sec. 3663A. The defendant claimed that because the district court did not determine the victim banks' losses beyond a reasonable doubt, his sentence violated Apprendi. See id. at 1053. We held that because 18 U.S.C. sec. 3663A required full restitution and did not set an absolute maximum amount, there was no statutory maximum penalty that could be increased by a certain finding, and therefore, Apprendi did not apply./3 See id. at 1054; see also United States v. Smith, 223 F.3d 554, 564-66 (7th Cir. 2000) (holding that Apprendi did not apply to statute providing for a maximum sentence of life imprisonment).

Section 309(c)(2) of the CWA, which allows for "a fine of not less than $5,000 nor more than $50,000 per day of violation," also lacks a statutory maximum penalty. 33 U.S.C. sec. 1319(c)(2). Thus, even though the sentence imposed under Section 309(c)(2) of the CWA depends on a factual finding-- the number of violation days--this finding cannot increase the amount of the fine over a prescribed statutory limit. See Behrman, 235 F.3d at 1054. Therefore, Apprendi does not apply and it was proper for the district court to find the number of violation days by a preponderance of the evidence.

Chemetco claims that the CWA does have a statutory maximum penalty: $50,000 per day of violation. Even if Chemetco's argument were true, it would not mandate a reversal in this case because an

Apprendi violation only occurs when the imposed sentence exceeds the prescribed statutory maximum. See Apprendi, 530 U.S. at 490. In its supplemental sentencing memorandum, Chemetco urged the court to find seventy-one days of violation, which would yield a fine range of $342,500 to $3,425,000./4 The $3,327,500 fine that the district court actually imposed on Chemetco was less than what Chemetco contends was appropriate. Therefore, even if the CWA had a statutory maximum penalty of $50,000 per day of violation, this limit was not exceeded in this case.

III.  Conclusion

   Because of the foregoing, we AFFIRM Chemetco's sentence.

FOOTNOTES

/1 This provision became effective on February 4, 1987. See Water Quality Act of 1987, Pub. L. No. 100-4, sec. 312, 101 Stat. 7. Before then, the range of available fines was $2,500 to $25,000 per day of violation. See 33 U.S.C. sec. 1319(c)(1) (1982).

/2 See United States v. TGR Corp., 171 F.3d 762, 763 n.2 (2d Cir. 1999); United States v. Wilson, 133 F.3d 251, 260 (4th Cir. 1997); United States v. Ahmad, 101 F.3d 386, 389 (5th Cir. 1996).

/3 We also held that Apprendi did not apply because restitution was not a "penalty for a crime." Id. In the present case, we need not determine whether a fine is a "penalty for a crime" for Apprendi purposes.

/4 Chemetco admitted to five days of violation before February 4, 1987 and sixty-six days thereafter. Therefore, the fine range for 71 days of violation is calculated as follows: (5 x $2,500 + 66 x $5,000 = $342,500) to (5 x $25,000 + 66 x $50,000 = $3,425,000).