In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-3376

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEPHEN R. SINES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 99-CR-60-01-T/F—**John D. Tinder,** *Judge.*

ARGUED JANUARY 16, 2002—DECIDED SEPTEMBER 12, 2002

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* After Stephen R. Sines pled guilty to bank fraud and mail fraud, the district court sentenced him to eighteen months in prison followed by a five-year term of supervised release. Mr. Sines objects to the following two conditions of his supervised release: first, that he attend an intensive sex offender treatment program requiring periodic polygraph testing, and second, that he refrain from contact with his former roommate, William S. Henry. The district court upheld both conditions of his supervised release. We affirm.

## I.

While on supervised release following a 1991 conviction for sexual exploitation of a child and mail fraud, Stephen Sines pled guilty to a charge of bank fraud for engaging in a check-kiting scheme and to a charge of mail fraud for illegally obtaining and using a credit account. By committing these crimes, Mr. Sines violated the terms of his supervised release, and, as a result, his supervision was revoked and he was sentenced to an additional twelve months' imprisonment. That same day, the district court sentenced him to eighteen months in prison followed by five years of supervised release for the new bank fraud and mail fraud charges. The district judge imposed several conditions on his supervised release on these charges, two of which are the subject of this appeal. First, the district judge ordered that he participate in a program of treatment for sex offenders. This condition was imposed, in part because, while in a sexual offender treatment program in prison for the 1991 charges, Mr. Sines admitted to having sexual contact with approximately two dozen minors. Second, the district judge imposed a standard provision that Sines not associate with any person convicted of a felony unless granted permission to do so by the probation officer.

As part of the plea agreement, Mr. Sines waived his right to appeal the conviction and sentence imposed on any ground and agreed not to contest his sentence in any manner, including by collateral attack.

One wrinkle emerged regarding the condition involving sex offender treatment. According to the transcript of the September 17, 1999 sentencing for the bank and mail fraud charges, the district court judge stated, "The defendant shall participate in an approved sex offender treatment program, including *periodic progress* as directed by the probation office." (9/17/99 Tr. at 19) (emphasis

added). The written judgment stated, "The defendant shall participate in a program of treatment for sex offenders, including *periodic polygraph examination*s, as directed by the probation officer." (R. 12) (emphasis added).

Mr. Sines began serving the term of his supervised release on January 3, 2001. His probation officer assigned him to an intensive sex offender treatment program which requires participants to take periodic polygraph examinations to ensure that they are participating fully and honestly in the program. Mr. Sines objected to the assignment and refused to participate on the following bases: (1) he had already completed an intensive sex offender treatment program during his previous incarceration, (2) he had not engaged in any illegal sexual contact with anyone since 1990, (3) the condition was not reasonably related to his rehabilitation and to the protection of the public from future crimes, and (4) the condition of requiring periodic polygraph examinations was not part of the original sentence.[1] Based on his refusal to participate, the government petitioned the court to revoke Mr. Sines' supervised release.

On May 30, 2001, the magistrate judge held a hearing on the government's petition to revoke supervised release. During the course of that hearing, Mr. Sines also objected to the fact that his probation officer had prohibited him from having any contact with his former roommate, William Henry. At approximately the same time Mr. Sines was arrested and convicted of sexual exploitation of a child, Mr. Henry was convicted in the State Court of Indiana of the misdemeanor charge of posses-

---

[1] In hearings before the district court, Mr. Sines also claimed that the polygraph examinations violated his Fifth Amendment right against self-incrimination. (8/24/01 Hg. Tr. at 7); (5/30/01 Hg. Tr. at 86). Mr. Sines appears to have abandoned this argument on appeal.

sing child pornography, based on his possession of a video-tape portraying Mr. Sines engaged in illegal sexual acts with a minor. Apparently there was some confusion on the part of the probation officer, and then on the part of the magistrate judge, as to whether Mr. Henry had been convicted of a felony—which would have made him a prohibited contact by the terms of Mr. Sines' existing supervised release order—or a misdemeanor.[2] After the hearing on revocation of supervised release, the magistrate judge recommended revising the terms of the supervised release to prohibit Mr. Sines from associating with Mr. Henry. He also found that, under the terms of the defendant's original sentencing, Mr. Sines was required to attend a sex offender treatment program with periodic polygraph examinations. On August 24, 2001, the district court judge held a hearing on the objections to the adoption of the magistrate's report and recommendation. At the conclusion of that hearing, the court accepted the magistrate's recommendation regarding both the sex offender treatment program and the prohibition on contact with Mr. Henry. Mr. Sines appeals.

## II.

### A.  The sex offender treatment program.

Mr. Sines objects to the special condition of his sentence of supervised release requiring him to attend a sex offend-

---

[2] According to the terms of Henry's plea agreement, Henry pled guilty to the Class A misdemeanor of Possession of Child Pornography in Superior Court of Marion County, Indiana. (Pl. Ex. 1 to 8/24/01 Hg.). We assume that the probation officer, Ms. Barrineau, believed that Mr. Henry had been convicted of a felony when she prohibited Mr. Sines from associating with him and did not intend, on her own, to impose a new condition of his supervised release.

er treatment program which includes periodic progress checks via polygraph testing. However, Mr. Sines knowingly and voluntarily entered into a plea agreement with the government, and in exchange for the deal offered to him, Mr. Sines agreed not to appeal, on any grounds, his conviction or the sentence imposed by the judge.

The relevant portions of that plea agreement are as follows:

> STEPHEN R. SINES understands that he has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined. Acknowledging this right and in exchange for the concessions made by the United States in this plea agreement, STEPHEN R. SINES agrees that in the event the Court sentences STEPHEN R. SINES to a sentence within the sentencing guidelines, at an offense level of thirteen (13) or below, STEPHEN R. SINES expressly waives his right to appeal the conviction and sentence imposed on any ground, including the right to appeal conferred by Title 18, United States Code, Section 3742. Additionally, STEPHEN R. SINES also expressly agrees not to contest his sentence or the manner in which it was determined in any collateral attack, including but not limited to, an action brought under Title 28, United States Code, Section 2255.

(R. 3)

A waiver is the intentional relinquishment or abandonment of a known right. *United States v. Sumner*, 265 F.3d 532, 537 (7th Cir. 2001). This court has held many times that a voluntary and knowing waiver of an appeal is valid and must be enforced. *United States v. Hare*, 269 F.3d 859, 860 (7th Cir. 2001); *United States v. Behrman*, 235 F.3d 1049, 1051 (7th Cir. 2000); *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999); *United States v. Woolley*,

123 F.3d 627, 631-32 (7th Cir. 1997); *United States v. Ogden*, 102 F.3d 887, 889 (7th Cir. 1996); *United States v. Wenger*, 58 F.3d 280, 281 (7th Cir. 1995). An effective waiver extinguishes the claim of error and precludes appellate review. *United States v. Williams*, 272 F.3d 845, 855 (7th Cir. 2001), *cert. denied*, 122 S. Ct. 1339 (2002). We note, however, that a waiver does not, in every instance, foreclose review. *Jones*, 167 F.3d at 1144. A defendant does not lose the right to pursue a claim that relates directly to the negotiation of the waiver, such as a claim that the waiver was involuntarily made, was based on an impermissible factor such as race, exceeds the statutory maximum, or was made without effective assistance of counsel. *Id.* at 1144-45. Furthermore, this court has been careful to enforce waivers only to the extent of the agreement. *Bridgeman v. United States*, 229 F.3d 589, 591-92 (7th Cir. 2000); *Behrman*, 235 F.3d at 1052. Unlike the defendant in *Behrman*, however, who only waived his right to appeal "any sentence within the maximum provided in the statute(s) of conviction"—and thus did not waive his right to appeal the restitution imposed by the court—Mr. Sines waived his right to appeal any portion of his sentence (provided the sentence was within the sentencing guidelines, at an offense level of thirteen or below).

In this case, Mr. Sines does not claim that the waiver was involuntarily made, was based on an impermissible factor, exceeded the statutory minimum, or was made without effective assistance of counsel. Mr. Sines objects to the conditions imposed by the sex offender treatment program on the basis that he has already completed an intensive sex offender treatment program, he has not engaged in any illegal contact in over ten years, and that the program is not reasonably related to his rehabilitation or to the protection of the public. Mr. Sines, however, waived the right to make these arguments when he signed the plea agreement.

Mr. Sines claims that he effectively objected to the requirement of sexual offender treatment at the September 17, 1999 hearing on the plea and disposition when, after he was remanded to the custody of the United States Marshal, his counsel stated, "Judge, if I might, with regard to the sex offender treatment, he has already completed that under the previous sentence." (9/17/99 Hg. Tr. at 19). The district court judge responded as follows: "Well, if that is the way it is, when he gets to—this says as directed by the probation officer. So if at the time he is on supervised release, why, he can take that up with the probation officer." *Id.*

The waiver, however, became effective when set out in writing and signed. *Wenger*, 58 F.3d at 282. By the time Mr. Sines arrived at the sentencing hearing, the deal had been done. We recognize that this system creates a bind for criminal defendants who must accept or reject a plea agreement without knowing the exact consequences of doing so. For this and other reasons, judges have questioned whether waivers really offer defendants the great benefits that some courts have claimed they do. *See, e.g., United States v. Whitlow*, 287 F.3d 638, 641 (7th Cir. 2002) (D. Wood, J. concurring). But this court has held that unanticipated sentences do not create grounds for negating the terms of a plea agreement. *Wenger*, 58 F.3d at 282. Having agreed not to challenge any sentence within the boundaries of the plea agreement, Mr. Sines could not, at the hearing, attempt to carve out the sentence that he would have liked to receive.[3]

Mr. Sines also argues that he is not appealing the sentence imposed, but has merely requested modification of

---

[3] Because we find that Mr. Sines waived his right to appeal the terms of his supervised release when he signed the plea agreement, we need not determine whether the appeal would have been timely.

his supervised release pursuant to Federal Rule of Criminal Procedure 32.1. Under the plea agreement, Mr. Sines has agreed to waive his right to appeal the sentence "on any ground" or to contest the sentence in any collateral attack. His attempt to dress his collateral attack in the clothing of a modification of supervised release must fail. Allowing him to challenge the sentence in this manner would gut the effectiveness of most waivers of appeal and waivers of collateral attack. *Cf. Behrman*, 235 F.3d at 1051 (holding that a general "'constitutional-argument exception' to waivers in plea agreements would vitiate most waivers of appeal and all waivers of collateral attack").

Although we hold that Mr. Sines waived the right to appeal his sentence, including the terms and conditions of his supervised release, one final clarification is in order. Mr. Sines argues that the requirement to take periodic polygraph examinations as part of a sex offender treatment program was not part of his original sentence at all. He bases this argument on the fact that, according to the transcript of the sentencing hearing, the court required Sines to participate in a "sex offender treatment program, including periodic progress, as directed by the probation office." Sines argues that this language prevails over the written judgment order which requires "a program for sex offenders including periodic polygraph examinations, as directed by the probation officer." Because this court takes care to enforce waivers only to the limited extent of the agreement (*Behrman*, 235 F.3d at 1052), we must evaluate carefully whether the requirement to submit to periodic polygraph examinations was, in fact, part of the sentence imposed, and thus part of the sentence that Sines agreed not to challenge.

After reviewing the record, we find that the requirement to take periodic polygraph examinations was, in fact, part of the sentence imposed. Although it is likely that the discrepancy between the court's oral pronouncement re-

quiring "periodic progress" and the written judgment requiring "periodic polygraphs" was merely a transcription error, we need not rely on this explanation. Even if the discrepancy was not due to a transcription error, periodic polygraphs are merely a means of evaluating progress and thus the written judgment is simply a more specific rendering of the pronouncement at the hearing. Furthermore, even if the court had said nothing about periodic polygraphs or progress, a district court may delegate to the probation officer details regarding the selection and schedule of a sex offender treatment program even though it must itself impose the actual condition requiring participation in a sex offender treatment program. *See United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001); *see also* U.S. Sentencing Guidelines § 5B1.3(d)(5) (under the appropriate circumstances, a court may impose "a condition requiring that the defendant participate in a mental health program approved by the United States Probation Office."). We therefore leave undisturbed the district court's ruling regarding the sexual offender treatment program.

## B.  Prohibition against associating with Mr. Henry.

For the reasons described above, it is arguable that Mr. Sines also waived his right to challenge the modification to his conditions of supervised release which prohibits contact with Mr. Henry. The government, however, makes no claim of waiver on this ground, and therefore we do not find it necessary to determine whether, by agreeing not to appeal or challenge his sentence, Mr. Sines also agreed not to challenge any modification of that sentence. Instead, after reviewing the merits of the claim, we find that the district court did not abuse its discretion in modifying the conditions of Mr. Sines' supervised release to prohibit him from associating with William Henry.

A district court "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision." 18 U.S.C. § 3583(e)(2). Section 3583(e) instructs, therefore, that just as a district court has wide discretion when imposing the terms of supervised release *(United States v. Guy*, 174 F.3d 859, 861 (7th Cir. 1999)) so too must it have wide discretion in modifying the terms of that supervised release. Consequently, we review a district court's imposition of a special condition of supervised release for an abuse of discretion. *United States v. Monteiro*, 270 F.3d 465, 469 (7th Cir. 2001) (reviewing initial imposition of supervised release).

Mr. Sines objects to the prohibition of contact with Mr. Henry on the grounds that the order: (1) exceeds the authority of the sentencing judge; (2) illegally imposes on Mr. Sines' freedom to associate; (3) subjects him to double jeopardy in violation of the Fifth Amendment; (4) is unnecessarily discriminatory.

In determining whether to modify the terms of supervised release, the district court must consider most of the same factors it considers in imposing a term of supervised release. 18 U.S.C. 3583(e). Specifically, the district court must ensure that the particular condition:

> (1) is reasonably related to specified sentencing factors, namely the nature and circumstances of the offense and the history and characteristics of the defendant;

> (2) is reasonably related to the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care,

or other correctional treatment in the most effective manner;[4]

(3) involves no greater deprivation of liberty than is reasonably necessary to achieve these goals; and

(4) is consistent with any pertinent policy statements issued by the Sentencing Commission.

*Monteiro*, 270 F.3d at 468-69 (citing *United States v. Schave*, 186 F.3d 839, 841 (7th Cir. 1999); 18 U.S.C. §§ 3583(d), 3553(a)(1), (a)(2)(B)(D); U.S. Sentencing Guidelines Manual § 5D1.3(b)).

In this case the district judge determined that the defendant's association with Mr. Henry would jeopardize his ability to comply with other conditions of his supervised release and would create an atmosphere ripe with potential for more criminal activity. Despite the fact that Mr. Henry was convicted of a misdemeanor and not a felony, his crime was directly related to Mr. Sines'—that is, the pornographic videotape that Mr. Henry illegally possessed depicted Mr. Sines engaged in sexual activities with a minor. Although the district court did not articulate each of the factors it considered when amending the terms of the supervised release, the court was within its discretion in modifying the terms to include a prohibition against contact with Mr. Henry.

The prohibition against contact with Mr. Henry was not imposed as punishment for his previous crime involving sexual exploitation of a child, but rather was based on the district court's assessment—after considering the history and characteristics of the defendant pursuant

---

[4] Conditions of supervised release need not relate to each of these purposes, provided they are sufficiently related to one or more. *United States v. Bee*, 162 F.3d 1232, 1235 (9th Cir. 1998).

to 18 U.S.C. §§ 3583(e), 3553 (a)(1)—that the condition would help to deter Mr. Sines from further criminal conduct and protect the public from further crimes. *See, e.g., Peterson*, 248 F.3d at 84-85 (upholding condition of supervised release requiring sex offender counseling after conviction for bank larceny, where defendant had prior conviction for sexually abusing his disabled daughter); *United States v. Wesley*, 81 F.3d 482, 484 (4th Cir. 1996) (ordering defendant to abstain from alcohol while on supervised release for embezzlement conviction based on defendant's past convictions involving alcohol-related offenses). Because it was within the court's discretion to impose the restriction as a condition of Mr. Sines' supervised release for the current violation, the court was not imposing further punishment for the previous crime in violation of the Fifth Amendment.

Mr. Sines argues that the modification which prohibits him from having contact with Mr. Henry infringes upon his freedom of association. Although it is true that persons on supervised release, like prisoners, do not relinquish all constitutional rights, (*Wolff v. McDonnell*, 418 U.S. 539, 555 (1974)) those rights are not unfettered. *Schave*, 186 F.3d at 844. A court may impose conditions of supervised release which implicate fundamental rights so long as those conditions are reasonably related to the ends of rehabilitation and protection of the public from recidivism. *Id.* at 843. Several courts, including this court, have upheld conditions of supervised release which impose on defendants' rights to freely associate with others. *See, e.g., id.* at 844 (restriction on defendant's association with white supremacist groups or organizations which pursue their aims through violent means); *United States v. Showalter*, 933 F.2d 573, 575-76 (7th Cir. 1991) (prohibition on associating with other skinheads and neo-Nazis); *United States v. Crandon*, 173 F.3d 122, 127-28 (3d Cir. 1999) (prohibition on accessing

internet); *Bee*, 162 F.3d at 1235-36 (prohibition on association with minors); *United States v. Bortels*, 962 F.2d 558, 559-60 (6th Cir. 1992) (prohibition on contact with anyone convicted of a felony, including defendant's fiancé); *Malone v. United States*, 502 F.2d 554, 556-57 (9th Cir. 1974) (prohibition against participating in or belonging to any American Irish Republican movement, any Irish or Irish Catholic organizations; prohibition against visiting Irish pubs or accepting employment that would associate defendant with Irish organizations).

Certainly a court must consider infringement on freedom of association more scrupulously when the infringement threatens to impose on a relationship that involves a deep attachment with an individual who shares in the personal aspects of one's life. *See Roberts v. United States Jaycees*, 468 U.S. 609, 619-20 (1984). Although Mr. Sines now claims that Mr. Henry is such a person, the record is devoid of any appreciable evidence of this type of relationship. Because Mr. Sines has failed to put forth any record evidence of his relationship with Mr. Henry, his claim that the order discriminates against him on the basis of sexual orientation is likewise without merit.

## III.

For the reasons stated above, we affirm the district court's ruling regarding the terms of Mr. Sines' supervised release which require Mr. Sines to attend a sex offender treatment program with periodic polygraph examinations and prohibit him from contact with Mr. Henry.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*