**UNITED STATES of America,
Appellee,**

v.

**TGR CORPORATION, Defendant–
Appellant.**

No. 98–1451.

United States Court of Appeals,
Second Circuit.

Argued March 15, 1999.

Decided March 26, 1999.

Jeffrey D. Ullman, Ullman, Furhman, Platt & Koy, Morristown, NJ (George C. Pratt, Parnon & Pratt, Huntington, NY, of counsel), for Defendant–Appellant.

Joseph C. Hutchison, Assistant United States Attorney, for Stephen C. Robinson, United States Attorney for the District of Connecticut (John T. McNeil, Special Assistant United States Attorney, on the brief)., for Appellee.

Before: OAKES, CALABRESI, and GIBSON, Circuit Judges.*

PER CURIAM:

Defendant TGR Corporation appeals from a judgment of conviction entered in the United States District Court for the District of Connecticut (Nevas, *J.*) on January 13, 1998, finding defendant guilty of knowingly discharging a pollutant into navigable waters in violation of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. § 1319(c)(2) (1994). The Act defines "navigable waters" to mean "waters of the United States, including the territorial seas." *Id.* § 1362(7). The sole issue presented in this appeal is whether the waterway into which the defendant company discharged waste slurry from an asbestos removal project is a "water of the United States" within the meaning of the Act. Holding that it is, we affirm.

## BACKGROUND

The defendant company is in the business of removing and disposing of materials containing asbestos. While performing such services at Fairfield Woods Middle School in Fairfield, Connecticut, employees of the defendant poured into a drain in the basement of the school a waste slurry, which was comprised of mastic, chemical mastic remover, water, and pieces of floor tile that contained asbestos. This slurry traveled from the drain into a storm water discharge system, and then into a water-way that is commonly referred to as "Grasmere Brook." Based on this activity, the government charged the defendant with knowingly discharging a pollutant into a water of the United States without a permit in violation of 33 U.S.C. §§ 1311, 1319(c)(2), and 18 U.S.C. § 2, and knowingly disposing and storing a hazardous waste without a permit in violation of 42 U.S.C. § 6928(d)(2)(A) and 18 U.S.C. § 2.[1]

The parties entered into a broad stipulation agreement,[2] leaving the sole remaining issue for trial. whether Grasmere Brook qualified as part of the "waters of the United States" under the Act. After a one-day bench trial, the district court held that Grasmere Brook was a tributary of Ash Creek, a navigable water of the United States that flows into the Long Island Sound, and that the defendant's discharge into the brook therefore fell within the Act's coverage and clearly violated § 1319(c)(2). After denying defendant's motion for a judgment of acquittal or alternatively a new trial, the district court ordered that the defendant pay a fine of $50,000 and remain on probation for five years.

Defendant appeals, arguing that Grasmere Brook is not part of the "waters of the United States" and is instead a "municipal separate storm sewer," which is part of a municipal "waste treatment system" and thus expressly excluded from the Act's coverage. *See* 40 C.F.R. § 122.2 ("Waste treatment systems ... are not waters of the United States.").

## DISCUSSION

Defendant concedes that the Clean Water Act is a "zero tolerance" statute, and that the Act "strictly prohibits *any*

---

* The Honorable John R. Gibson, Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. The charges under 42 U.S.C. § 6928(d)(2)(A) and 18 U.S.C. § 2 were dismissed by the government at the close of the trial.

2. The stipulation set forth that three of the four elements of an offense under 33 U.S.C. § 1319(c)(2) were not in dispute: (1) TGR knowingly discharged a pollutant; (2) from a point source; (3) without a permit. *See United States v. TGR Corp.*, No. 397CR140(AHN), 1998 WL 342041 (D.Conn. Mar. 31, 1998).

'point source' discharge of *any* pollutant to the 'waters of the United States' " without a permit. Defendant argues, however, that the waterway known as Grasmere Brook is instead "a municipal waste stream" that was "designed and constructed to carry storm and other waste water runoff." It asserts that the waterway is part of a "waste treatment system," and thus cannot be considered part of the "waters of the United States" under the Act, citing 33 U.S.C. § 1362(14), and 40 C.F.R. § 122.2.

The term "waters of the United States" has a very broad meaning under the Act. The Supreme Court has made this clear:

> In keeping with these views, Congress chose to define the waters covered by the Act broadly. Although the Act prohibits discharges into "navigable waters," *see* CWA §§ 301(a), 404(a), 502(12), 33 U.S.C. §§ 1311(a), 1344(a), 1362(12), the Act's definition of "navigable waters" as "the waters of the United States" makes it clear that the term "navigable" as used in the Act is of limited import. In adopting this definition of "navigable waters," Congress evidently intended to repudiate limits that had been placed on federal regulation by earlier water pollution control statutes and to exercise its powers under the Commerce Clause to regulate at least some waters that would not be deemed "navigable" under the classical understanding of that term.

*United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 133, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985) (holding that "the evident breadth of congressional concern for protection of water quality and aquatic ecosystems" supported the Army Corps of Engineers' interpretation of "waters of the United States" to encompass "wetlands adjacent to waters as more conventionally defined").

Recognizing that Congress intended that the definition of "waters of the United States" be construed broadly, several of our sister Circuits have held that nonnavigable tributaries of navigable waterways qualify as "waters of the United States." *See, e.g., United States v. Eidson*, 108 F.3d 1336, 1341–42 (11th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 248, 139 L.Ed.2d 177 (1997) (holding that a human-made tributary fell under the Act); *United States v. Texas Pipe Line Co.*, 611 F.2d 345, 347 (10th Cir.1979) (holding that a small unnamed tributary fell under the Act); *United States v. Ashland Oil and Transp. Co.*, 504 F.2d 1317, 1325 (6th Cir. 1974) (finding an unnamed tributary to fall under that Act despite the fact that its waters flowed through three other waterways before reaching a navigable river); *cf. Concerned Area Residents for the Environment v. Southview Farm*, 34 F.3d 114, 118–19 (2d Cir.1994). Similarly, governing regulations under the Act, promulgated by the Environmental Protection Agency, define "waters of the United States" to encompass "intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, 'wetlands,' sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds, the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce." 40 C.F.R. § 122.2.[3]

---

3. 40 C.F.R. § 122.2 defines all of the following to qualify as "waters of the United States:"

(a) All waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide;

(b) All interstate waters, including interstate "wetlands;"

(c) All other waters such as intrastate lakes, rivers, streams (including intermittent streams), mudflats, sandflats, "wetlands," sloughs, prairie potholes, wet meadows, playa lakes, or natural ponds the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce including any such waters:

(1) Which are or could be used by interstate or foreign travelers for recreational or other purposes;

(2) From which fish or shellfish are or could be taken and sold in interstate or foreign commerce; or

TGR's assertion that Grasmere Brook is part of a municipal storm sewer or waste treatment system is without merit. To qualify as a "municipal separate storm sewer," a conveyance must be "[o]wned or operated by a State, city, town, borough, county, parish, district, association, or other public body" and must be "[d]esigned or used for collecting or conveying storm water." 40 C.F.R. § 122.26(b)(8). Testimony at trial manifestly established that Grasmere Brook is not "owned or operated" by a public body.

And although "waste treatment systems" are not "waters of the United States" under the Act, *see* 40 C.F.R. § 122.2, the regulations provide that "[t]his exclusion applies only to manmade bodies of water which neither were originally created in waters of the United States (such as disposal area in wetlands) nor resulted from the impoundment of waters of the United States," *id.* Under this definition, Grasmere Brook clearly cannot be considered a waste treatment system.

At trial, the government introduced evidence, and the district court found, that "Grasmere Brook is *not* a man-made storm water sewer system, but rather [is] a natural waterway housing aquatic life and water fowl," which in turn flows into Ash Creek, an undisputed navigable waterway. *TGR Corp.*, 1998 WL 342041 at *2. Although over time the brook has been channeled in some places (mostly by developers) into underground pipes to make room for development, in many places it still flows above ground through wooded areas and near residential homes. Testimony by a Fairfield conservation officer showed that the brook is used by migratory birds, that fish can be seen in the brook's clear waters, and that children sometimes wade and play in the brook. The evidence at trial also demonstrated that the brook is depicted in aerial photographs dating back as far as 1931, and appears on federal maps as well as town maps of inland water courses (either referred to by name or identified as a stream).

We agree with the district court and conclude that Grasmere Brook is a natural tributary of a navigable water. We also agree with those circuits that have held that tributaries of navigable waterways qualify as "waters of the United States" under the Act. It follows that Grasmere Brook is part of the "waters of the United States" under the Act. We therefore hold that defendant's conduct was a violation of the Clean Water Act and its conviction must be affirmed.

\*     \*     \*

The judgment of the district court is affirmed.

---

(3) Which are used or could be used for industrial purposes by industries in interstate commerce;

(d) All impoundments of waters otherwise defined as waters of the United States under this definition;

(e) Tributaries of waters identified in paragraphs (a) through (d) of this definition;

(f) The territorial sea; and

(g) "Wetlands" adjacent to waters (other than waters that are themselves wetlands) identified in paragraphs (a) through (f) of this definition.

40 C.F.R. § 122.2.