NO SPRAY COALITION, INC., National Coalition Against the Misuse of Pesticides, Inc., Disabled in Action, Inc., Save Organic Standards New York, Valerie Sheppard, Mitchell J. Cohen, Robert Lederman, Eva Yaa Asantewaa, Plaintiff–Appellants,

v.

CITY OF NEW YORK, Michael Bloomberg, the Department of Health of the City of New York, Thomas Frieden, The Office of Emergency Management of the City of New York, John Thomas Odermatt, Defendant–Appellees,

Aquatic Pesticide Coalition, American Mosquito Control Association, Movants.

Docket No. 02–9484.

United States Court of Appeals, Second Circuit.

Argued: Sept. 17, 2003.

Decided: Dec. 9, 2003.

Karl S. Coplan (Joel R. Kupferman and Christine N. Simmons, on the brief), Pace Environmental Litigation Clinic, White Plains, N.Y., for Appellant.

Inga Van Eysden (Susan E. Amron and Mark P. McIntyre, on the brief), Office of the Corporation Counsel of the City of New York, New York, N.Y., for Appellees.

Before: LEVAL and SACK, Circuit Judges, and KORMAN, District Judge.[*]

LEVAL, Circuit Judge.

Plaintiffs, a coalition of environmental groups and individuals, brought a citizen suit under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.,* to enjoin the City of New York from spraying insecticide in a manner causing the pollution of navigable waters without a permit. The Clean Water Act forbids discharge of a pollutant into the navigable waters of the United States without a permit issued under the terms of the Act. The Act authorizes "any citizen" to sue to enforce its provisions. The district court (Martin, *J.*) granted defendants' motion for summary judgment. The court ruled that New York's use of the insecticides substantially complied with the requirements of a different but related act, the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.* In contrast to CWA, FIFRA does not provide for citizen enforcement suits. The district court reasoned that Congress intended FIFRA as the primary scheme governing pesticide use, and that, where a particular use challenged as a violation of CWA substantially complied with FIFRA, FIFRA's refusal to allow enforcement by citizen suit should prevail over CWA's allowance of such suits. Because we conclude that Congress intended the CWA's citizen suit provision to operate regardless whether the claimed violation of CWA also violated FIFRA, we vacate the opinion of the district court and remand for further proceedings.

## BACKGROUND

In August of 1999, several residents of Queens contracted a strain of viral encephalitis known as West Nile virus, which is transmitted by mosquitoes. In response New York City deployed trucks and helicopters to spray pesticides designed to kill adult mosquitoes. West Nile virus appeared in the City in each subsequent summer, and the City's spraying program continued. The City has used three pesticides in the spraying program: malathion (sold under the trade name Fyfanon), resmethrin (Scourge), and sumithrin (Anvil). All three are regulated under FIFRA. It is undisputed that New York did not seek or obtain the type of permit CWA requires as a prerequisite to the discharge of a pollutant into a navigable waterway.

On July 20, 2000, plaintiffs filed a complaint in the Southern District of New York, claiming that New York's spraying program involved discharge of a pollutant into a navigable waterway and was being done without a permit in violation of CWA. The complaint also alleged violation of various other statutes. The complaint sought an injunction to terminate the spraying, plus other remedies. In a first opinion and order issued September 25, 2000, the district court denied the plaintiffs' request for a preliminary injunction and dismissed various claims. These rulings either were not appealed or were affirmed by this court. *See No Spray Coalition, Inc. v. City of New York,* 252 F.3d 148 (2d Cir. 2001).

The district court permitted discovery to proceed on the CWA claims founded on allegations of direct application of pesticides to protected waters. Plaintiffs produced evidence that on occasion the defendant's pesticides had been sprayed over lakes, streams, ponds, or marshes. In the ruling forming the basis of this appeal, the district court then dismissed the plaintiffs' remaining CWA claims by summary judg-

[*] The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

ment, based on its conclusion that the CWA does not entitle plaintiffs to enforce its provisions by citizen suit in these circumstances. (Order of November 26, 2002.) The court found that the spraying which plaintiffs claimed as violations of CWA either did not violate of FIFRA, or at most constituted mere "technical violations" of FIFRA. Interpreting the relationship between the two statutes, the court reasoned that in such circumstances FIFRA's non-allowance of enforcement by citizen suit would take precedence over CWA's allowance of enforcement by citizen suit.

We disagree with the district court's reasoning. In our view, its ruling impermissibly modified CWA. CWA expressly permits enforcement by citizen suit. The district court's interpretation disallows enforcement of CWA through a citizen suit unless the alleged violation of CWA also violates FIFRA in a substantial manner. We find no basis for this interpretation in the statutes. CWA authorizes "any citizen" to bring suit to enforce its requirements, regardless whether the alleged violation of CWA also constitutes a substantial violation of FIFRA. We accordingly vacate the judgment and remand the case for further proceedings on plaintiffs' CWA claims.

## DISCUSSION

The Clean Water Act is a regulatory statute designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The statute prohibits "discharge" of "any pollutant" into "navigable waters" without a permit issued by the United States Environmental Protection Agency ("EPA") under the National Pollution Discharge Elimination System ("NPDES") or under a federally approved state permit system ("SPDES").[1] *See* 33 U.S.C. §§ 1311(a), 1342. The term "navigable waters" has been construed broadly to include non-navigable tributaries of navigable waterways, including small streams. *See, e.g., United States v. TGR Corp.*, 171 F.3d 762, 765 (2d Cir.1999). In issuing permits, EPA and state governments either may establish national or statewide caps for cumulative discharge of specific pollutants from all regulated sources, or may proceed on a case-by-case basis, taking into account the ecological conditions of particular waterways. As noted, the provision of CWA that is critical for this suit authorizes any citizen to sue to enforce its provisions.[2]

■ FIFRA is a regulatory statute governing the marketing and use of pesticides, fungicides, rodenticides, and other designated classes of chemicals. The statute requires that all such chemicals sold in the United States be registered with EPA, which accepts registration only upon a finding that the poison "when used in accordance with widespread and commonly recognized practice ... will not generally cause unreasonably adverse effects on the

---

1. The statute encompasses other exceptions to its blanket prohibition on water pollution. The requirement of a NPDES or SPDES permit is, however, the sole topic of this litigation.

2. 33 U.S.C. § 1365(a) provides,
   [A]ny citizen may commence a civil action on his own behalf—(1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

environment." 7 U.S.C. § 136a(c)(5)(D).[3] The EPA issues a "label" for each registered chemical, indicating the manner in which it may be used. A FIFRA label thus encapsulates the terms on which a chemical is registered, and its requirements become part of FIFRA's regulatory scheme. FIFRA makes it unlawful "to use any registered pesticide in a manner inconsistent with its labeling." 7 U.S.C. § 136j(a)(2)(G). Unlike CWA, FIFRA does not provide for citizen enforcement suits. *See No Spray Coalition, Inc.*, 252 F.3d at 150. Such enforcement actions may be brought only by specified agencies of federal and state governments.

Observing the legislative history and structure of FIFRA and the CWA, the district court reasoned:

> The fact that these two regulatory schemes were before Congress at the same time establishes beyond doubt that when Congress made a deliberate decision not to provide a private right of [enforcement] action under FIFRA, it did not intend to permit private parties to circumvent that decision through an action under the Clean Water Act.

*No Spray Coalition, Inc. v. City of New York*, 2002 WL 31682387, at *2 (S.D.N.Y. Nov.26, 2002). In the court's view, allowing citizen enforcement suits under CWA to bar acts that do not violate FIFRA in any substantial manner would "do violence to the intent of Congress not to provide a private right of action for FIFRA violations." *Id.*

█ The court accordingly ruled that a citizen enforcement suit under the Clean Water Act based on the use of chemicals regulated by FIFRA could proceed only if the pesticide application claimed to violate CWA also constituted a substantial viola-

tion of FIFRA. Applying this standard, the court found that plaintiffs' allegations "establishe[d] no more than minor technical violations of [FIFRA], which, if actionable at all, are only actionable if the action is commenced by the Attorney General or the EPA." *Id.* at *3.

We respectfully disagree with the district court's interpretation of the statutes. In our view, with regard to the availability of a citizen enforcement suit, each statute stands on its own, and means what it says. Congress expressly provided in CWA that its provisions might be enforced through a citizen enforcement suit. In passing FIFRA, Congress made no such provision. Accordingly, a citizen suit may not be maintained to enforce obligations created by FIFRA. On the other hand, a citizen suit seeking to enforce obligations created by CWA is expressly authorized.

The district court cautioned that canons of statutory construction discourage "reading … in" remedies to a statute that omits them. *No Spray Coalition, Inc. v. City of New York*, 2000 WL 1401458, at *3 (S.D.N.Y. Sept.25, 2000). That proposition, however, does not support the district court's conclusions. The question in this case is not whether to read into FIFRA a remedy Congress omitted from it. The question is rather whether to eliminate from CWA a remedy which it expressly provides, merely because another related statute does not similarly provide such a remedy. We can see no reason to do so.

For these reasons, we hold that the plaintiffs' "citizen suit" brought to compel compliance with CWA's terms was authorized by the statute. We reject the district court's view that CWA's provision for citi-

---

**3.** The statute defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb).

zen suit becomes inoperative where the alleged violation of CWA lies in the use of pesticides covered by FIFRA in a manner that is not a substantial violation of FIFRA. We therefore vacate the judgment and remand for further proceedings.

Defendants contend we should affirm the grant of summary judgment on a somewhat different ground. They argue that where an alleged violation of CWA consists of a use of pesticides governed by FIFRA, use of those pesticides in the manner approved by the EPA under FIFRA (or deviating therefrom to only an insignificant degree) should be deemed conclusively not to violate CWA. The district court appeared at first to be undertaking to address that question. In the end, however, the district court did not answer it.[4] While expressing doubt as to whether the City's actions violated the CWA, the court nonetheless noted that the City's actions might be actionable under CWA "if the action [were] commenced by the Attorney General or the EPA." *No Spray Coalition, Inc.*, 2002 WL 31682387 at *3. The court's position was essentially that plaintiffs' suit must be dismissed not because defendants' conduct did not violate CWA, but rather because the violation of CWA, if there was one, may be challenged only by a government entity authorized to bring an action to enforce FIFRA, and not by a citizen.

Defendants asks us to affirm on the ground that spraying in substantial compliance with FIFRA must be deemed also to comply with CWA. We will not venture to answer that complex question in the first instance. We remand to the district court.

## CONCLUSION

The judgment of the district court is VACATED and the case Remanded.

---

4. The court introduced its opinion of Nov. 26, 2002, by saying that its prior opinion "[left] for another day the question of whether the spraying of insecticides directly over [New York City's bodies of water] would violate the Clean Water Act," and then added, "That day has arrived." *No Spray Coalition, Inc.*, 2002 WL 31682387 at *2. Instead of ruling on that question, however, the court dismissed because the alleged violation of CWA could not be asserted by citizen action.