In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2855

MARK F. TAYLOR,

*Petitioner-Appellant,*

*v.*

BILLIE J. MICHAEL, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 10-cv-2185—**Harold A. Baker**, *Judge.*

ARGUED APRIL 25, 2013—DECIDED JULY 30, 2013

Before MANION and KANNE, *Circuit Judges*, and LEE, *District Judge.**

KANNE, *Circuit Judge.* The Grant Park, Illinois, police arrested Mark F. Taylor on August 5, 2000, based on allegations that he had engaged in improper sexual behavior with three children. He was subsequently

_____

* The Honorable John Z. Lee of the United States District Court for the Northern District of Illinois, sitting by designation.

charged and convicted in Illinois state court for a variety of crimes related to these allegations. Taylor challenged his conviction on both direct appeal and collateral review in the Illinois system with the assistance of retained counsel. Failing at each step along the way, Taylor next attempted to file a *pro se* petition for habeas corpus in federal court. By the time Taylor filed his petition, however, the statutorily-imposed time limit for presenting his habeas case had expired. Taylor appears before us now requesting that we exercise our equitable powers to toll the limitations period and take up the merits of his case. Finding that Taylor does not meet the standard for equitable tolling, we agree with the district court that Taylor's petition is not timely and should therefore be denied.

## I. BACKGROUND

Because we determine that Taylor's petition is untimely, it is unnecessary to plumb the factual depths of his case. It suffices to say that on January 7, 2002, he was convicted on eight criminal counts (out of a charged nine) for initiating inappropriate relationships with several minor children. After the trial, Taylor's retained attorney—Mark D. Johnson—withdrew from the case. With the assistance of new counsel, Taylor moved for a new trial, alleging a variety of errors including ineffective assistance of counsel. The trial court agreed that Johnson's representation was deficient in some respects, specifically in Johnson's failure to impeach or even cross-examine some witnesses. Conse-

quently, the court vacated four of the eight counts of conviction. On the remaining four counts, the trial court sentenced Taylor to eleven years in prison (an eleven-year sentence for one count that ran concurrently with a 180-day sentence for the three other counts).

Taylor appealed the four unvacated counts. He continued to argue that he was denied effective assistance of counsel with respect to these counts because of Johnson's failures during the trial. Taylor also made several other arguments: that his warrantless arrest should have been quashed; that he was denied his right to remain silent; that he did not knowingly and intelligently waive his right to a jury trial; that the trial court should have held a competency hearing for several of the underage witnesses; that the court improperly allowed video testimony; and that Taylor's silence was improperly taken into account at sentencing. (Appellant's Br. at 12.) Rejecting all of Taylor's arguments, the Illinois Appellate Court affirmed Taylor's convictions on May 28, 2004. The Illinois Supreme Court rejected Taylor's Petition for Leave to Appeal ("PLA") on November 24, 2004, thereby ending his direct appeal.

Taylor filed for state post-conviction relief on April 18, 2005. *See* 725 ILCS 5/122-1. In his petition to the Circuit Court of Kankakee County, Taylor argued that his trial attorney (Johnson) represented him while under a conflict of interest and was thus unconstitutionally ineffective. The crux of Taylor's argument was that, while Johnson was putatively representing Taylor in the original Kankakee County criminal proceedings, Johnson was simultaneously under indictment in McLean County,

Illinois, on four felony bribery charges.[1] Taylor alleged that Johnson never informed him, nor informed the trial court, of the pending charges and that, if Taylor had known of the charges, he would not have hired Johnson. Finding Taylor's arguments unpersuasive, the trial court dismissed Taylor's post-conviction petition on November 10, 2005. The Illinois Appellate Court affirmed that judgment on December 6, 2007.

Taylor wanted to appeal his case further, but he continued to have trouble with the attorneys he hired. After the Illinois Appellate Court affirmed the dismissal of Taylor's petition for post-conviction relief, he retained America's Criminal Defense Group ("ACDG"), which he describes as "an online law firm based in California." (Appellant's Br. at 15.) It seems that ACDG served as a point of contact for Taylor and found attorneys who could represent him in his continuing appeals. ACDG initially assigned Nebraska attorney Paula Hutchinson to Taylor's case. She filed a petition for rehearing with the Illinois Appellate Court after it affirmed the dismissal of Taylor's post-conviction petition. Taylor says, however, that "Hutchinson was non-responsive on a number of occasions to queries by both previous counsel . . . and by Mr. Taylor."[2] (*Id.*)

---

[1] Johnson eventually pled guilty to a misdemeanor offense, but the bribery charges were dismissed.

[2] Taylor's description of Hutchinson is consistent with the fact that the Nebraska Supreme Court suspended Hutchinson's law license in 2010 for neglecting clients.

ACDG next assigned attorney Ross M. Eagle to Taylor's case. Eagle filed Taylor's post-conviction PLA in the Illinois Supreme Court and remained his attorney through that court's denial of the PLA on May 28, 2009. Taylor alleges, however, that Eagle did not inform him of the denial until a meeting on July 29, 2009, over two months later. During that meeting, says Taylor, Eagle gave him a copy of *Jimenez v. Quarterman*, 555 U.S. 113 (2009), and told him that the deadline for filing a petition of habeas corpus in federal court was one year from the PLA denial plus the time during which he could have filed a petition for certiorari with the U.S. Supreme Court. Note, however, that this calculation was not correct. *Jimenez* stands for the proposition that the limitations period is tolled during the period a defendant can petition for certiorari on *direct appeal*, *id.* at 119-20, but does not speak to the post-conviction process. Indeed, a certiorari petition from post-conviction review does *not* toll the time limit or otherwise act as a grace period. *Lawrence v. Florida*, 549 U.S. 327, 331-32 (2007). Taylor has not presented us with any method of verifying the content of that July 29 meeting, such as an affidavit from Eagle, but it is apparent that Taylor misunderstood the law on this point.

Based on that July 29 meeting, and on communication between Taylor's mother and ACDG in the fall of 2009, Taylor continued to believe that ACDG attorneys would file a habeas corpus petition on his behalf. In January 2010, however, ACDG confirmed to Taylor that it would not represent him in federal post-conviction review. Taylor searched for alternate counsel and began to prepare a *pro se* petition.

Taylor filed his *pro se* habeas corpus petition in the United States District Court for the Central District of Illinois on August 17, 2010. The petition alleged that Taylor was denied the right to trial counsel and that he was denied due process based on the state's alleged presentation of perjured testimony at trial. The first claim mirrored Taylor's arguments from the state post-conviction proceedings—that Johnson represented Taylor under a conflict of interest and was otherwise ineffective. On the due process claim, Taylor argued that the recent conviction of Grant Park Police Chief Scott Fitts for a bribery and extortion scheme would support a finding that Fitts, who had testified against Taylor at trial, had fabricated all or part of his testimony.

Taylor's petition made clear he assumed his filing was timely. The filing deadline, he stated, was August 26, 2010. Taylor calculated this date as one year from the date the Illinois Supreme Court rejected his PLA, plus a 90-day grace period (the period Taylor erroneously believed was tolled for the filing of a certiorari petition with the U.S. Supreme Court). The respondent, however, moved to dismiss the petition as time-barred under 28 U.S.C. § 2244(d)(1). The district court granted the motion and entered judgment on that basis on July 6, 2011. (R. 13.)

We granted Taylor's request for a certificate of appealability on March 29, 2012. (Dkt. 13.) In our order, we decided that Taylor had met the certificate of appealability standard for the two substantive argu-ments he made to the district court: that he had received

unconstitutionally ineffective assistance of trial counsel and that the state had denied him due process by pre-senting Fitts's perjured testimony. (*Id.*) We noted, however, that it would be necessary for both parties to "address the antecedent timeliness questions presented by this appeal." (*Id.*) In the end, these timeliness questions dictate the outcome of this case. For the reasons described below, we agree with the district court that Taylor's petition was untimely.

## II. ANALYSIS

Taylor's petition for a writ of habeas corpus was undeni-ably tardy.[3] Taylor does not deny this fact, although

---

[3] This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. No. 104-132, 110 Stat. 1214 (1996). Under 28 U.S.C. § 2244, there is a one-year limitations period for filing a habeas corpus petition in federal court. *See* 28 U.S.C. § 2244(d)(1). This period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; . . . [or]

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* In addition, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending

(continued...)

_____

[3] (...continued)

shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The wrinkle in Taylor's case is that each claim presents a different date on which to begin the timeliness calculation. This court has not yet decided how to evaluate the timeliness of a habeas petition that presents multiple claims, and we requested briefing on the issue by the parties in our certificate of appealability. (Dkt. 13.) Our two basic options seem to be either (1) evaluating timeliness on a claim-by-claim basis, or (2) considering the petition in its entirety (so that if *any* claim is timely under AEDPA's limitation period, then all claims may be considered). Here, however, it is not necessary to resolve the question, and so we reserve it for another day. Even presuming the outcome that is most generous to the petitioner—that every claim should be considered if any claim is timely—we would find Taylor's petition untimely. We take note, though, of the fact that each of our sister circuits to consider the issue has determined that, in the habeas context, a petition's timeliness should be evaluated on a claim-by-claim basis. See *Zack v. Tucker*, 704 F.3d 917, 922-25 (11th Cir. 2013) (en banc), for an in-depth discussion of Supreme Court and circuit court decisions relevant to this issue.

To calculate the timeliness of Taylor's habeas corpus petition, then, we begin by looking to Taylor's substantive claims to find the "date on which the factual predicate of the claim or claims presented could have been discovered." 28 U.S.C. § 2244(d)(1)(D). The very latest date from which we could start Taylor's one year clock is May 28, 2009—the date of Fitts's conviction (coincidentally also the date on which the Illinois Supreme Court denied Taylor's PLA). Using that date,

(continued...)

he advances an argument for why his tardiness should be excused by this court: that some period of time should have been equitably tolled. We cannot find the equitable tolling argument convincing, however, and so we dismiss this case for the simple reason that Taylor did not file his petition within the statutorily prescribed time limit.

Equitable tolling—a court's decision to toll some period of time to allow a petitioner to overcome an otherwise breached limitations period—is an exceptional remedy available to a habeas petitioner who shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (internal quotation marks omitted); *accord Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Petitioners bear the burden of proving that they qualify for equitable tolling. *Ray v. Clements*, 700 F.3d 993, 1007 (7th Cir. 2012); *see also Pace*, 544 U.S. at 418.

Taylor argues that both prongs of *Holland*'s test are met in his case. First, he says, he has been diligent in pursuing his rights. As soon as ACDG informed him of

---

[3] (...continued)

Taylor's petition would have been due in federal court no later than May 28, 2010, several months before Taylor actually filed. Thus, even using the most forgiving possible timeline, Taylor still requires some extra help in meeting AEDPA's limitations period before a federal court can review the merits of his petition.

its decision to discontinue representation, Taylor claims that he began working on his *pro se* petition, which he believed to be due to the district court by August 26, 2010. Second, Taylor argues that the actions of ACDG (e.g. not telling him about the Illinois Supreme Court's decision until July 2009 and delaying the discontinuation of representation until January 2010) amount to "extraordinary circumstances" that prevented timely filing. "[D]raw[ing] upon decisions made in other similar cases for guidance," *Holland*, 130 S. Ct. at 2563, however, we cannot find Taylor's arguments convincing.

Although we are mindful of "equity's resistance to rigid rules," *id.*, we think that *Holland* ably illustrates a diligent pursuit of rights in the face of extraordinary circumstances in the habeas context. Holland, a death row inmate in Florida, attempted to keep in contact with his court-appointed attorney throughout his state post-conviction proceedings. *Id.* at 2555. Specifically, he repeatedly sought assurance that his claims would be preserved for federal habeas review and that statutory deadlines would be met. *Id.* His attorney's responses were irregular. *Id.* Holland repeatedly wrote to both the Florida Supreme Court and its clerk to ask that his attorney be removed from the case because of this failure to communicate; these requests were denied. *Id.* at 2555-56. After the attorney argued Holland's case in the Florida Supreme Court, Holland again wrote to the attorney to stress the importance of filing a timely federal habeas petition. *Id.* at 2556. He made such requests repeatedly. *Id.* at 2556-57.

Holland's AEDPA time limit expired twelve days after the Florida Supreme Court denied relief; Holland, however, did not learn of the court's ruling until five weeks later while he was working in the prison library. *Id.* "He immediately wrote out his own *pro se* federal habeas petition and mailed it to the Federal District Court for the Southern District of Florida the next day." *Id.* at 2557. The Supreme Court found that Holland's actions satisfied the diligence requirement for equitable tolling, emphasizing that "reasonable diligence" rather than "maximum feasible diligence" was the standard. *Id.* at 2565. Though the Court cautioned that "more proceedings may be necessary" to explore the extraordinary circumstance prong of the investigation, *id.*, the Court noted that the alleged actions of Holland's attorney constituted a "serious instance[ ] of attorney misconduct," *id.* at 2564.

Here, although Taylor protests that he diligently pursued his rights in federal court in the face of extraordinary circumstances, we are left without significant evidence to support that assertion. And recall, the burden of proving the assertion is Taylor's to carry. *See Pace*, 544 U.S. at 418; *Ray*, 700 F.3d at 1007. The record Taylor presents is a wan facsimile of *Holland* and all too similar to other unsuccessful petitions. Like Holland, Taylor had repeated trouble communicating with his attorneys and can present documentation that illustrates the futility of his attempts.

There, the parallels cease. We know, for instance, that Holland made an effort to become familiar with AEDPA's

timeliness requirements—his letters to his attorneys reflect this, as does the fact that he *immediately* filed a *pro se* habeas petition when he learned that his state court appeal had been rejected. In contrast, we know that Taylor did not make a similar effort. Taylor's *pro se* petition was filed seven months after ACDG declined further representation and three months after the latest possible expiration of Taylor's filing window. Moreover, the petition reflects Taylor's continued, mistaken belief that his filing was due August 26, 2010. That window of time—between January and May 2010—during which Taylor could have filed a petition that would arguably have been timely, ultimately dooms his equitable tolling argument.

Taylor either misunderstood his attorney's advice, or his attorney gave him bad advice. Under either scenario, however, Taylor did not confirm the date his habeas petition was due in federal court, despite having several months to do so. That lack of action does not show reasonable diligence, and it does not show that extraordinary circumstances actually prevented Taylor from filing. "It may be negligent to wait until what is by a lawyer's own calculation the last possible day, because such a calculation could be wrong. But this kind of negligence is not 'extraordinary' by any means. Such a blunder does not extend the time for filing a collateral attack*.*" *Griffith v. Rednour*, 614 F.3d 328, 331 (7th Cir. 2010). Whittling this case to its essential components, Taylor had the opportunity to file a petition in an arguably timely manner, but he simply misunderstood the law.

Lack of familiarity with the law, however, is not a circumstance that justifies equitable tolling. *Tucker v. Kingston*, 538 F.3d 732, 735 (7th Cir. 2008). When an inmate, despite roadblocks thrown in his way, has reasonable time remaining to file a habeas petition in a timely manner, the circumstances cannot, as a definitional matter, be said to have prevented timely filing, as the standard requires. *See Hizbullahankhamon v. Walker*, 255 F.3d 65, 75-76 (2d Cir. 2001) (Sotomayor, J.) (denial of access to prison law library early in the one-year period did not prevent timely filing). Even after the alleged extraordinary circumstance (ACDG's delay) ended, Taylor had several months during which to file an arguably timely habeas corpus petition, but he miscalculated the due date and so did not. "Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling," *Lawrence*, 549 U.S. at 336; neither is petitioner miscalculation. We agree with the district court that Taylor was not entitled to equitable tolling and that his petition was therefore untimely.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of the petition for a writ of habeas corpus.