In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3019

CALVIN DAVIS,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:14-cv-50124— **Frederick J. Kapala**, *Judge.*

ARGUED JANUARY 4, 2016 — DECIDED MARCH 15, 2016

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Calvin Davis pleaded guilty in 2010
to a narcotics conspiracy charge pursuant to a written plea
agreement providing that he would be sentenced to a term
equal to 66 percent of either the low end of the sentencing
range advised by the Sentencing Guidelines or the statutory
minimum term, whichever was greater. *See* Fed. R. Crim. P.
11(c)(1)(C). Davis expected to receive a prison term of no more

than 80 months. However, the Guidelines range as subsequently calculated by the probation officer and adopted by the district court turned out to be much longer than the parties had expected it would be. The court ultimately ordered Davis to serve 172 months in prison, a term that was equal to 66 percent of the low end of the Guidelines range and therefore consistent with the plea agreement, but more than twice what the parties had anticipated when they entered into that agreement. No appeal was filed from the sentence. But more than four years later, following the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), Davis filed a motion under 28 U.S.C. § 2255 contending that he was entitled to relief because the judge's sentencing findings regarding his criminal history had increased the statutory minimum term of imprisonment. He also asserted, among other claims, that his attorney was ineffective in advising him about the consequences of his plea (including the likely sentence) and in failing to file a notice of appeal following his sentencing. The district court dismissed the motion, reasoning that Davis had no viable claim under *Alleyne* given that the Supreme Court has not yet declared that decision applicable retroactively on collateral review, and that Davis's other claims were untimely. We agree and affirm the district court's judgment.

## I.

In 2008, Davis became involved with a Rockford, Illinois drug ring led by Hollis Daniels that trafficked primarily in heroin and occasionally crack cocaine. *See United States v. Block*, 705 F.3d 755, 758 (7th Cir. 2013) (describing the organization). His duties included picking up heroin from a supplier in Chicago, dropping off the raw heroin to other conspirators for

dilution and packaging, supplying street-level dealers with 25-count retail packages of heroin, and collecting the proceeds of their sales. The organization distributed approximately 700 grams of heroin per week. Davis was stopped and arrested while on his way to complete a pre-arranged delivery of heroin to someone who was, unbeknownst to him, a confidential informant; he had 80 grams of heroin in his possession. After he was charged in Illinois state court, he began to cooperate with federal and state agents investigating the Hollis organization, became a confidential informant, and over the course of the next year wore a recording device to capture other members of the organization discussing their illegal activities. The investigation culminated in a second superseding indictment charging Davis and 14 others with conspiring to distribute (and to possess with the intent to distribute) more than one kilogram of heroin and 50 grams of crack cocaine, among other offenses. *See* 21 U.S.C. §§ 841(a)(1), 846.

Davis pleaded guilty to the conspiracy charge pursuant to a written plea agreement. Davis agreed to continue cooperating with the government and to provide truthful testimony in any subsequent proceeding. In exchange for his assistance, the government agreed to ask the court to depart downward from either the applicable statutory minimum term of imprisonment or the low end of the advisory range specified by the Sentencing Guidelines, whichever was higher, and to impose a sentence equal to 66 percent of that term. *See* 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1. Because the drug conspiracy involved more than one kilogram of heroin, Davis was presumptively subject to a statutory minimum sentence of 10 years. *See* 21 U.S.C. § 841(b)(1)(A)(i). The agreement expressly

acknowledged that minimum term as well as the maximum possible term of life imprisonment. *See* R. 300 at 4 ¶ 8a & 7 ¶ 10d.[1] However, given what the attorneys knew about Davis's criminal history, both parties anticipated that Davis would have only one criminal history point (resulting in a criminal history of I) and that he would consequently be eligible for a sentence below the statutory minimum. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2(a)(1). Based on their preliminary Guidelines calculations, the parties also anticipated that the advisory Guidelines range would be 108 to 135 months. In accordance with the Government's agreement to seek a downward departure to 66 percent of either the low end of that range (*i.e.,* approximately 71 months) or of the statutory 10-year minimum (roughly 79 months), whichever was greater, the parties expected the recommended sentence to be no more than 80 months. This was a Rule 11(c)(1)(C) agreement, so provided that the government found Davis's cooperation to be sufficient and made the departure motion, the district court, having accepted the agreement, was obliged to sentence Davis to 66% of either the Guidelines minimum or statutory minimum term.

The agreement recognized in several ways, however, that the parties' Guidelines calculations were preliminary and that both the Guidelines range and the final sentence might ultimately turn out to be different than the parties assumed at the time they entered into the agreement. Thus, in recounting the parties' calculations as to Davis's criminal history and the

---

[1] Citations to the record in Davis's criminal prosecution take the form of "R. ___." Citations to the record in Davis's section 2255 proceeding take the form of "2255 R. ___."

anticipated Guidelines range, for example, the agreement noted that the calculations were "based on the facts now known to the government." R. 300 at 6 ¶ 10(c) & (d). More to the point, the agreement expressly recognized that the parties' Guidelines calculations were tentative, that the calculations might change following the probation officer's investigation, and that any such changes would not constitute a basis for a withdrawal of Davis's guilty plea:

> Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

R. 300 at 7 ¶ 10e. The agreement similarly acknowledged that any errors in correcting or interpreting the Guidelines could be corrected by either party prior to sentencing, and again stated that "[t]he validity of this Plea Agreement will not be affected

by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections." R. 300 at 7 ¶10f. Finally, the agreement acknowledged that no threats, promises or representations had been made nor agreements reached, other than those set forth in the plea agreement itself, to cause Davis to plead guilty. R. 300 at 16 ¶ 28. In signing the agreement, Davis acknowledged that he had read, understood, and accepted its terms. R. 300 at 17 ¶ 29.

As it turned out, the probation officer's presentence investigation and report produced Guidelines calculations that were much less favorable to Davis than those set forth in the plea agreement. Davis previously had served in the United States Army, and after receiving his military records, the probation officer learned that Davis had, contrary to his representation to her, been discharged from the Army on other than honorable terms[2] and had a disciplinary record that included convictions at a general court martial (pursuant to his guilty plea) for the military offenses of fraudulent enlistment, bigamy, attempted bigamy, and adultery and a 30-month term of confinement for those offenses. That record increased the number of points in Davis's criminal history, disqualifying him for a sentence below the 10-year statutory minimum, and placed him into a criminal history category of III. Furthermore, because Davis had, in the probation officer's view, misrepre-

---

[2]   The probation officer characterized Davis's discharge as dishonorable. Davis's counsel represents that, upon further investigation, it appears that Davis actually received a so-called "bad conduct" discharge, which is a somewhat less serious, although still negative, form of discharge.

sented the circumstances of his military discharge and his disciplinary history,[3] the presentence report recommended that his offense level be increased by two levels pursuant to section 3C1.1 for obstruction of justice.[4] Yet another unanticipated two-level increase was proposed for the firearms that had been possessed by Davis's co-conspirators. *See* U.S.S.G. § 2D1.1(b)(1).[5] The various changes resulted in a Guidelines sentencing range of 262 to 327 months.

When Davis was sentenced on October 13, 2010, the district court adopted the Guidelines calculations set forth in the presentence report. Judge Kapala acknowledged that the resulting sentencing range was higher than the parties had anticipated in the plea agreement, but attributed the bulk of the difference to the fact that "the attorneys did not anticipate that

---

[3] The probation officer also noted that Davis had failed to appear at a meeting convened to discuss the discrepancy, but the district court did not consider that absence when it imposed the enhancement for obstruction of justice. R. 875 at 9, 11.

[4] Counsel suggests that because Davis served more than one term in the military, Davis may have been confused as to which discharge the probation officer was asking him about rather than deliberately attempting to misrepresent the circumstances of his discharge. However, any error as to the enhancement for obstruction of justice would fall within the scope of the appeal and collateral relief waiver we discuss below. The same is true with respect to counsel's additional representation that Davis had disclosed and discussed his bigamy conviction with the probation officer.

[5] The probation officer and the district judge agreed that despite the enhancement for obstruction of justice, Davis should still receive credit for acceptance of responsibility given the extent of his cooperation with and assistance to the government. *See* U.S.S.G. § 3E1.1, comment. (n.4).

[Davis] would lie to the probation officer [and], unfortunately, the defendant brought the consequences of that lie upon himself." R. 875 at 26. Consistent with its obligations under the plea agreement, the government moved the court pursuant to section 5K1.1 to depart downward and impose a sentence at 66 percent of the low end of the advisory Guidelines range (which was obviously higher than the statutory minimum). The judge granted the motion and ordered Davis to serve a prison term of 172 months.[6]

Davis did not appeal from the sentence imposed. Indeed, in the plea agreement, Davis had largely waived his right to both appeal his conviction and sentence and to seek collateral relief under section 2255:

> **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings

---

[6] On September 22, 2015, Davis's sentence was reduced by agreement to 138 months pursuant to Guidelines amendment 782, which lowered the offense level for his narcotics-related offense. *See* 18 U.S.C. § 3582(c)(2).

by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Plea Agreement. Defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

R. 300 at 12-13 ¶ 19b.

On May 31, 2014, Davis submitted his pro se motion for relief under section 2255. As relevant here, the motion attacked his guilty plea and sentence on three grounds. First, Davis alleged that he was deprived of the effective assistance of counsel when, at the time of his guilty plea, his lawyer "grossly

misinformed" him as to the potential sentence he could receive. 2255 R. 1 at 9. Second, Davis contended that the district court ran afoul of the Supreme Court's subsequent decision in *Alleyne* by subjecting him to an enhanced minimum term of imprisonment based on facts not charged in the indictment or found by a jury. Third, Davis asserted that his counsel was ineffective when he failed to file a notice of appeal from his conviction and sentence despite Davis's instruction to do so.

The district court dismissed Davis's section 2255 request on its own motion as untimely. 2255 R. 3. The court noted that under section 2255(f), Davis had one year from the date his conviction became final to file his motion. Davis's conviction became final on October 27, 2010, after the 14-day period in which to file an appeal from his conviction and sentence expired; Davis thus had until October 27, 2011, to file his request for collateral relief. Yet, Davis did not file the motion until May 31, 2014, more than three and one-half years later. The court found no merit to Davis's contention that his motion was nonetheless timely because it was filed within one year of the Supreme Court's *Alleyne* decision, because the Supreme Court had not yet declared that decision retroactively applicable to cases on collateral review. *See Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013). Davis subsequently asked the district court to reconsider the dismissal, which the district court declined to do.

We granted Davis a certificate of appealability with respect to the claim that his counsel was ineffective for failing to file a notice of appeal, and we also appointed counsel to represent Davis in this appeal. In briefing the appeal, Davis's counsel has addressed other aspects of Davis's request for relief under

section 2255, which may be construed as an implicit request to expand the certificate of appealability. It is not strictly necessary for us to rule on that request because, as we explain below, the district court correctly concluded that Davis's section 2255 motion was untimely.

## II.

We would be remiss if we did not begin our analysis by noting the first and most obvious potential obstacle to relief for Davis, which is his waiver of the right to appeal his conviction and sentence and to seek collateral relief under section 2255. We have repeatedly enforced such waivers in the face of claims, not unlike Davis's, that a defendant was sentenced to a term of imprisonment significantly greater than he was led to expect at the time of his guilty plea. *See United States v. Smith*, 759 F.3d 702, 707 (7th Cir.) ("There is no doubt a defendant may waive his right to challenge a sentence not yet imposed … .") (collecting cases), *cert. denied*, 135 S. Ct. 732 (2014); *United States v. Henry*, 702 F.3d 377, 380 (7th Cir. 2012) ("unanticipated sentences do not create grounds for negating the terms of a plea agreement") (quoting *United States v . Sines*, 303 F.3d 793, 799 (7th Cir. 2002)). Davis does not suggest that the waiver itself was involuntary on his part or the product of ineffective assistance of counsel—a claim that the waiver itself authorizes—but he attempts to argue that the grossly inaccurate advice his attorney allegedly gave him as to the potential sentence casts the knowing and voluntary nature of the entire plea agreement, and his guilty plea, into doubt. *See Smith*, 759 F.3d at 707 ("The sole type of ineffectiveness claim we have said that a defendant may not waive is an ineffectiveness claim having to do with the waiver (or the plea

agreement as a whole) and its negotiation.") (citing *Hurlow v. United States*, 726 F.3d 958, 964-66 (7th Cir. 2013)); *see also Solano v. United States*, — F.3d —, 2016 WL 456204, at *3 (7th Cir. Feb. 5, 2016) ("The appeal waiver stands or falls with the plea agreement.") (citing *United States v. Behrman*, 235 F.3d 1049, 1051 (7th Cir. 2000)). Davis insists that he never would have entered into the plea agreement had he realized he could be sentenced to a term above the statutory minimum of 10 years. *See generally Morales v. Boatwright*, 580 F.3d 653, 659 (7th Cir. 2009) (citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985)).

His claim of involuntariness is difficult to square with the terms of the plea agreement. As we have discussed, the agreement expressly noted that the Guidelines calculations reflected in the agreement were preliminary, that they might change following the presentence investigation, and that "the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations," R. 300 at 7 ¶ 10e, all of which is incongruous with Davis's alleged reliance upon the sentencing range set forth in the agreement. Similar admonishments likely were given to Davis at his change-of-plea hearing, although a transcript of that hearing is not part of the record in this appeal or in the underlying criminal case. That transcript, coupled with the admonishments and acknowledgments in the written plea agreement itself, might well doom Davis's after-the-fact claim of involuntariness. *See Nunez v. United States*, 495 F.3d 544, 545-46 (7th Cir. 2007), *cert. granted, judgment vacated, & remanded on other grounds*, 554 U.S. 911, 128 S. Ct. 2990 (2008); *see also Nunez v. United States*, 546 F.3d 450, 452 (7th Cir. 2008)

(noting that this portion of the original opinion was beyond the scope of the Supreme Court's remand). In any case, we need not address the validity of the plea agreement and its waiver provision further, as we agree with the district court that Davis's section 2255 motion fails on other grounds.

We start with the *Alleyne* claim. Indubitably, this claim, which is based on a change in law post-dating Davis's plea and sentence, is one that is not barred by the plea agreement's waiver. R. 300 at 13 ¶ 19b; *see also* § 2255(f)(3). But there are, nonetheless, multiple problems with the claim. *Alleyne* holds that any factual determination that increases the statutory mandatory minimum term to which a defendant is subject (in that case, the fact that a defendant "brandished" a gun) must be charged in the indictment and proven beyond reasonable doubt to the factfinder. 133 S. Ct. at 2161-63. It is, first of all, not at all clear why *Alleyne* is of any help to Davis. He was subject to a 10-year statutory minimum based on the amount of heroin involved in the trafficking conspiracy—an amount that was charged in the indictment and to which he pleaded guilty. So the minimum term was not the result of any determination made by Judge Kapala at sentencing. Perhaps Davis could assert a variant of an *Alleyne* claim in the sense that it was the judge's findings as to his criminal history (including his convictions in the military court martial) that rendered him ineligible for a below-minimum sentence. *See* § 5C1.2(a)(1). Davis himself points this out in a footnote in his opening brief. Davis Br. at 12 n.3. The problem with this variant, however, is that criminal history findings are generally exempt from the *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), line of precedents entitling a defendant to a formal charge and a

trial on facts that expose him to harsher penalties. *See Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219 (1998). And the Supreme Court in *Alleyne* itself said that it was "not revisit[ing]" the holding of *Almendarez-Torres*. 133 S. Ct. at 2160 n.1. *See United States v. Long*, 748 F.3d 322, 329 (7th Cir.) (enhanced mandatory minimum properly applied notwithstanding that findings as to prior convictions that triggered the enhancement were made by judge rather than jury), *cert. denied*, 134 S. Ct. 2832 (2014). But, in any case, the clearest impediment to the *Alleyne* claim is the one that Judge Kapala cited: the Supreme Court has not held that *Alleyne* applies retroactively to cases on collateral review. Our decision in *Simpson* notes that it is only the Supreme Court that has authority to declare *Alleyne* retroactive, 721 F.3d at 876, and unless and until it does so, Davis cannot claim the benefit of *Alleyne* in a 2255 motion. *See also Crayton v. United States*, 799 F.3d 623, 624 (7th Cir.), *cert. denied*, 136 S. Ct. 424 (2015); *Walker v. United States*, 810 F.3d 568, 574 (8th Cir. 2016) ("every circuit to consider this issue has concluded that *Alleyne* does not apply retroactively") (collecting cases). The district court was thus on firm ground in dismissing this claim.[7]

---

[7] Davis suggests that he should be able to claim the benefit of *Alleyne* without the Supreme Court first declaring *Alleyne* retroactive because his case never had the airing that it would have had in a direct appeal (whether as a result of the appeal waiver in the plea agreement or his attorney's alleged ineffectiveness in not filing an appeal). Davis Br. at 18-19. But one has nothing to do with the other. *Alleyne* was decided several years after Davis's conviction became final. And as our decision in *Simpson* makes clear, we simply do not have the authority to declare *Alleyne* applicable retroactively on collateral review—only the Supreme Court has that power.

(continued...)

This brings us to the timeliness of the other claims presented in Davis's section 2255 motion. Section 2255(f) imposes a one-year time limit on the claims asserted in a section 2255 motion. Although that period may have begun at different times for different aspects of Davis's 2255 motion, we cannot discern a scenario under which any of the other claims were timely. To the extent Davis is complaining of errors made at his sentencing or his attorney's ineffectiveness with respect to the plea agreement, those claims were known to Davis at the time his conviction became final—which as the district court noted, was on October 27, 2010, when the 14-day time to file an appeal from his conviction and sentence expired. Thus, Davis had until October 27, 2011, to seek collateral relief on those claims. *See* § 2255(f)(1). As to claims based on subsequent changes in Supreme Court jurisprudence, the period begins to run on the date that the Supreme Court recognizes a right or (as relevant here) deems the right applicable to cases on collateral review. *See* § 2255(f)(3). With respect to the claim of attorney ineffectiveness based on the failure of Davis's counsel to follow his instruction and file a timely appeal following his sentencing, we may assume that Davis did not immediately realize, at the conclusion of the 14-day period in which such an appeal could have been filed, that his counsel had, in fact, filed no appeal. Still, our cases recognize that a defendant bears a duty of diligence in monitoring the status of his appeal. *See Ryan v. United States*, 657 F.3d 604, 607-08 (7th Cir. 2011); *Montenegro v. United States*, 248 F.3d 585, 592-93 (7th Cir. 2001),

---

[7] (...continued)
721 F.3d at 876.

*overruled in part on other grounds by Ashley v. United States*, 266 F.3d 671, 674-75 (7th Cir. 2001). The limited record before us does not indicate when Davis learned that his counsel had not filed an appeal, but under no circumstance can we imagine that, in the exercise of due diligence, it could have taken Davis more than three years to discover that fact. *See* § 2255(f)(4) (specifying that for claims based on newly discovered facts, one-year period begins to run when those facts could have been discovered in the exercise of due diligence). In any case, the sole basis on which Davis has argued that this claim and the other claims he has included in his section 2255 motion apart from the *Alleyne* claim is the fact that the *Alleyne* claim itself is timely, having been filed within one year of the *Alleyne* decision. But as every other circuit to have considered the question has concluded, and we now hold,[8] the timeliness of each claim asserted in either a section 2255 motion or a petition challenging a state-court conviction under 28 U.S.C. § 2254[9] must be considered independently. *See DeCoteau v. Schweitzer*, 774 F.3d 1190, 1192 (8th Cir. 2014); *Capozzi v. United States*, 768 F.3d 32, 33 (1st Cir. 2014) (per curiam), *cert. denied*, 135 S. Ct. 1476 (2015); *Zack v. Tucker*, 704 F.3d 917, 926 (11th Cir. 2013) (en banc); *Prendergast v. Clements*, 699 F.3d 1182, 1186-88 (10th Cir. 2012); *Mardesich v. Cate*, 668 F.3d 1164, 1169-71 (9th Cir. 2012); *Bachman v. Bagley*, 487 F.3d 979, 982-84 (6th Cir. 2007); *Fielder v. Varner*, 379 F.3d 113, 117-22 (3d Cir. 2004)

---

[8]   We previously left this question open. *Taylor v. Michael*, 724 F.3d 806, 810 n.3 (7th Cir. 2013).

[9]   *See* 28 U.S.C. § 2241(d)(1), setting forth time limits for a petition under section 2254 which parallel those of section 2255(f).

(Alito, J.); *see also Stallings v. Williams*, 2015 WL 1003918, at *3 (S.D. Ill. Mar. 4, 2015), *appeal filed* (7th Cir. Aug. 26, 2015) (No. 15-2827); *Jefferson v. Duncan*, 2015 WL 249646, at *4 n.4 (N.D. Ill. Jan. 16, 2015); *Harris v. Polley*, 2014 WL 5025767, at *6 (C.D. Ill. Oct. 7, 2014); *Steele v. Lemke*, 2014 WL 148742, at *3 (N.D. Ill. Jan. 14, 2014); *Judkins v. Hardy*, 2013 WL 2156038, at *4-*5 (N.D. Ill. May 17, 2013); *Ramos v. Trancoso*, 2010 WL 3025013, at *2-*3 (N.D. Ill. Aug. 2, 2010). The simple fact that Davis might have one timely claim to make under section 2255 based on a Supreme Court precedent issued years after his conviction otherwise became final does not allow him to tack on additional, otherwise untimely claims to that one timely claim. Davis asserts that all of his claims are intertwined, but that is true only in the sense that they all generally relate to his sentence, and that is not enough to deem them all timely. The Supreme Court's 2013 decision in *Alleyne*—which in any case we have said is not a basis for relief to Davis— does not render his other claims timely.[10]

---

[10] Davis has suggested in his reply brief that the government breached the plea agreement by advocating for the sentencing enhancements (including the enhancement for obstruction of justice) that substantially lengthened the advisory Guidelines range. *See* Davis Reply at 7-8. We find nothing in the plea agreement that bars the government from agreeing with enhancements proposed by the probation officer, however. *See* R. 300 at 7 ¶ 10e. And, of course, the government did move for the section 5K1.1 departure from the bottom of the Guidelines range as anticipated by the agreement.

**III.**

For all of the reasons we have discussed, the district court properly denied/dismissed Davis's section 2255 motion.

AFFIRMED