In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3545

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SANDRA MCGUIRE

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:08 CR 214 — **James T. Moody**, *Judge.*

ARGUED MAY 28, 2015 — DECIDED AUGUST 6, 2015

Before FLAUM, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge*. Defendant-Appellant Sandra McGuire entered into a plea agreement that contained a provision waiving her appellate rights. After the district court accepted her guilty plea, but before McGuire was sentenced, she filed a motion to withdraw her plea. The district court denied the motion, and McGuire appeals that denial. We dismiss the appeal, because we conclude that McGuire's

waiver of appellate rights encompasses her appeal of the denial of the plea-withdrawal motion.

## I. Background

In October 2009, a grand jury returned an indictment against McGuire charging her with multiple counts of concealing and laundering drug proceeds in violation of 18 U.S.C. § 1956(a), (h). The charges stemmed from allegations that over the course of several years, McGuire received the proceeds of marijuana and cocaine sales from her nephew. She then deposited them into her checking account and used those funds to pay the nephew's living expenses. Prosecutors alleged that between 2006 and 2008, McGuire deposited over $141,000 of illegal drug proceeds into her account. When she was interviewed by federal agents, McGuire admitted knowing that the money came from marijuana sales, though she denied knowing that her nephew also sold cocaine. McGuire pled not guilty to the charges.

On November 1, 2012, she entered into a binding written plea agreement. *See* Fed. R. Crim. Pr. 11(c)(1)(A), (C). She pled guilty to one count of violating 18 U.S.C. § 1956(a)(1)(b)(i), admitting that she deposited $2,200 of drug proceeds into her checking account on December 1, 2008. She faced maximum penalties of twenty years' imprisonment and a $500,000 fine—penalties that she acknowledged in the plea agreement. The agreement specified that McGuire would receive a sentence that included no imprisonment, but instead a period of twelve months' probation. The Assistant United States Attorney ("AUSA") agreed to dismiss all remaining counts against her. The agreement specified that if the district court did not accept these sentencing recommendations, McGuire would be permitted to

withdraw her guilty plea and reinstate her prior not-guilty plea.

The plea agreement also contained a provision involving the waiver of McGuire's appellate rights. We reproduce the relevant portion of that waiver here:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed; I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense(s) as set forth in this plea agreement; with this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation.

On November 1, 2012, McGuire appeared in the district court for her change of plea hearing. During that hearing, McGuire was placed under oath, and the court reviewed both the plea agreement and her appellate waiver. She acknowledged that she was giving up her appellate rights, and that she was doing so knowingly and voluntarily. The court established a factual basis for her plea, and then asked her to restate her plea to the charge. She responded, "Guilty, sir."

The following exchange then took place between the prosecutor, McGuire's defense counsel, and the court:

**Prosecutor**: But the parties would ask Your Honor to withhold judgment until sentencing.

**The Court**: I don't have to. Why would I have to?

**Defense counsel**: Your Honor, if I could. We concur in the request that you withhold the finding of guilty and that you take both the plea and the plea agreement under advisement.

**The Court**: Well I'm gonna take the plea agreement under advisement, but I'm gonna adjudicate her guilty. Why should I not do that?

**Defense counsel**: Our point of view—Sandra McGuire is a firefighter with the City of Gary. If you find her guilty, that could trigger employment consequences.

**The Court**: She'd lose her job.

**Defense counsel**: Yes.

**The Court**: She's gonna lose her job anyway.

**Defense counsel**: Not if you don't accept the plea agreement and then the matter pends while we await trial or some other sort of plea. Because you would be required under this agreement to allow her to withdraw the plea if you decline to accept the recommendation in the agreement. That would—but it—or …

**The Court**: You're not making a lot of sense, Mr. Vanes. Sorry.

**Defense counsel**: She would have lost her job for a finding of guilty that is vacated.

**The Court**: Yeah, but, you know, if I do accept the plea agreement …

> **Defense counsel**: Then she's judged guilty. Then she faces the consequences. But we are not at that stage.
>
> **The Court**: All right. Her guilty plea is accepted, but I do withhold adjudication of guilt until her sentencing. That's basically—protects her, right?
>
> **Defense counsel**: Yes.

Defense counsel's somewhat confusing exchange reflects an understanding that McGuire appears to have had at the time of the plea hearing. The district court was not required to accept the agreement's sentencing recommendation. If the district court rejected the plea agreement, then by its terms, McGuire would be permitted to withdraw her guilty plea.

But as soon as McGuire was adjudicated guilty, she would likely lose her job, and maybe her pension. McGuire served as a firefighter for many years with the Gary, Indiana Fire Department, and both sides appear to agree that a felony conviction would have mandatorily resulted in a termination of McGuire's employment. So if the court waited until sentencing to adjudicate her guilty, she would be able to maintain her job in the interim. In addition, in the event that her plea agreement was rejected, she could continue her employment through trial, if one were to take place. McGuire's request appears to have been motivated by her understandable desire to remain employed as long as possible. The district court appeared sympathetic and accommodated her request.

On May 24, 2013, her attorney filed a motion to withdraw, and McGuire retained new counsel. On July 23, 2014, McGuire filed a motion to withdraw her guilty plea. The district court denied the motion on August 6, 2014. On October

31, 2014, following a sentencing hearing, the district court
adjudicated McGuire guilty and sentenced her in accordance
with the written plea agreement. McGuire appeals the denial
of her motion to withdraw the guilty plea.

## II. ANALYSIS

It is well-settled that a defendant may waive her right to
appeal. *United States v. Wooley*, 123 F.3d 627, 631 (7th Cir.
1997). We will enforce such a waiver "so long as the record
clearly demonstrates that it was made knowingly and volun-
tarily." *United States v. Williams*, 184 F.3d 666, 668 (7th Cir.
1999). A waiver is knowing and voluntary if it "substantially
complied with Federal Rule of Criminal Procedure 11." *Unit-
ed States v. Zitt*, 714 F.3d 511, 515 (7th Cir. 2013). When a de-
fendant waives his right to appeal in a plea, "he also waives
his right to appeal a denial of his motion to withdraw that
plea." *United States v. Alcala*, 678 F.3d 574, 578 (7th Cir. 2012).
We review *de novo* whether a waiver is enforceable. *United
States v. Quintero*, 618 F.3d 746, 750 (7th Cir. 2010).

We find that McGuire waived her right to appeal her
conviction, and that waiver encompasses the ability to chal-
lenge the denial of a motion to withdraw a plea. Because we
conclude that her appeal must be dismissed, we need not
address McGuire's arguments regarding the denial of her
plea withdrawal motion. We focus instead on her arguments
concerning waiver.

### A. Voluntariness of Waiver

McGuire argues that her appellate waiver was made in-
voluntarily, and thus is invalid. Her argument proceeds as
follows: (1) the court withheld adjudication of guilt until
sentencing; (2) therefore, the plea agreement was not "in ef-

fect" until sentencing; (3) she filed her motion to withdraw her plea agreement before sentencing; (4) therefore, the plea agreement and appellate waiver were not "in effect" when she filed her motion to withdraw, and were subsequently applied to her involuntarily.

McGuire argues that the language of the agreement itself either suggests that the agreement was not "in effect" at the time that she filed her motion to withdraw, or it confused her as to the finality of her guilty plea. She argues that the agreement "on its face suggests that the finality of the agreement was to be held in abeyance until sentencing." She adds that this confusion was exacerbated by the fact that the court withheld judgment until sentencing. We disagree.

First, the language in the agreement did not "hold the agreement in abeyance" until sentencing—it merely underscored that the court was not required to accept the agreement. The court's acceptance or rejection of the agreement would be resolved at sentencing, and that is what happened here.

Second, McGuire's argument regarding the delayed adjudication of guilt brings to mind the unclean hands doctrine. We note that it was by McGuire's *own request* that the court took the unusual step of withholding the adjudication of guilt until sentencing. It made clear, however, that it "accepted" McGuire's guilty plea. While McGuire may not have known the difference between accepting a plea and withholding judgment, her attorney certainly did: that's why he made the unusual request, which, we add, inured to her benefit. McGuire has presented no evidence to suggest that her attorney misled her or otherwise represented that her plea was somehow "revocable" prior to sentencing.

In *Alcala*, the court "accepted" the defendant's guilty plea. *Alcala*, 678 F.3d at 576. The defendant, before sentencing, then filed a motion to withdraw his plea. *Id.* And in that case, we held that the appellate waiver contained in Alcala's plea agreement encompassed a waiver of his right to appeal a denial of a motion to withdraw the plea. *Id.* at 578. The same chain of events occurred here. McGuire has pointed to no authority, case law or statutory, to suggest that a defendant must be adjudicated guilty before the provisions of her plea agreement are "in effect."

Indeed, McGuire does not specify what she means by "in effect" in the context of plea agreements. It is not clear to us that an adjudication of guilt has much impact on the plea agreement, at least as far as McGuire's argument is concerned. For one thing, courts remain free to reject plea agreements even after an adjudication of guilt. And for another, Federal Rule of Criminal Procedure 11, the rule governing pleas, includes the following statement regarding a defendant's ability to withdraw a guilty plea: "[a] defendant may withdraw a plea of guilty … before the court *accepts the plea*, for any reason or no reason; or … after the court *accepts the plea*, but before it imposes sentence." Fed. R. Crim. P. 11 (emphasis added). This rule does not mention when a defendant has been "adjudicated guilty;" it mentions when the court "accepts" the plea. In this case, the court stated at the plea hearing that it "accepted" the plea.

We therefore conclude that McGuire voluntarily waived her appellate rights.

*B. Contract of Adhesion*

McGuire also argues that her appellate waiver should be considered void because it amounts to a contract of adhesion that is contrary to public policy. We held in *United States v. Hare* that the appellate waiver provision at issue in that case did not render its attendant plea agreement a contract of adhesion. 269 F.3d 859, 862 (7th Cir. 2001). McGuire takes issue with one statement in that opinion, in which we noted that many defendants plead guilty without waiving their rights to appeal. We stated that, at least in that case, "the prosecutor said that his office always seeks waivers as a negotiating position, but that it makes some plea agreements without waivers when defendants refuse to consent." *Hare*, 269 F.3d at 862.

Not so in the Northern District of Indiana, McGuire argues. She alleges that every plea agreement in that district includes, as a non-negotiable provision, a waiver of appellate rights. The government neither disputes nor concedes this point. We note that McGuire provides scant evidence of such a policy: she cites only the plea agreements of her co-defendants in this case. Nor does she argue that she was rebuffed in any attempts to negotiate the appellate waiver with the AUSA.

But, setting the evidentiary issues aside, we note that the "offending" entity McGuire refers to is a *contract* of adhesion—not a *provision* of adhesion. In the typical scenario, a contract is "offered by the authoring party on a take it or leave it basis rather than being negotiated between the parties." *Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 668 (7th Cir. 2003) (quoting *Northwestern National Ins. Co. v. Donovan*, 916 F.3d 372 at 377 (7th Cir. 1990)). McGuire does not argue that

the Northern District of Indiana's policy is to offer take-it-or-leave-it plea agreements, not subject to negotiation. Nor does she argue that such an offer happened in her case. Instead, she disputes one specific provision.

The presence of non-negotiated terms does not automatically transform an agreement into a contract of adhesion that will not be enforced. As we noted in *Hare*, "[m]any contracts have standard terms that are not open to negotiation yet are routinely enforced." 269 F.3d at 862; *see also, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 597 (1991) (enforcing a forum-selection clause that was included among three pages of terms attached to a cruise ship ticket); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1151 (7th Cir. 1997) (enforcing an arbitration clause in a form contract). We can only assume that many prosecutors, and perhaps many defendants, enter plea negotiations with certain terms about which they are unwilling to bargain.

Even if the government had been unwilling to negotiate the appellate waiver provision, such a refusal would not render the provision void. McGuire raises no other arguments regarding the enforceability of her appellate waiver. We conclude that the waiver of appellate rights provision is valid and enforceable.

### III. CONCLUSION

For the reasons above, this appeal is DISMISSED.