In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17–3436

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RENEE S. PERILLO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 15-CR-202 – **Richard L. Young,** *Judge.*

ARGUED MAY 30, 2018 — DECIDED JULY 30, 2018

Before WOOD, *Chief Judge,* and SYKES and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant-appellant Renee Perillo pleaded guilty to conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c), and to commissioning a murder for hire in violation of 18 U.S.C. § 1958. Before sentencing, Perillo moved to withdraw her plea. The district court denied Perillo's motion and sentenced her to concurrent terms of 324

months for conspiracy to kidnap and 120 months for commissioning a murder for hire. The court also ordered Perillo to pay just under $75,000 in restitution. Perillo appeals the denial of her motion to withdraw her plea and the restitution order. Perillo's plea agreement included a valid appellate waiver that covers both of these claims, however, so we dismiss her appeal.

I.  *Factual & Procedural Background*

    A. *Criminal Conduct*

The underlying facts here sound like the plot of a mediocre novel, focused on Perillo's relationship with her boyfriend, Dr. Arnaldo Trabucco, and her attempts to harm Trabucco's ex-wife and the ex-wife's divorce attorney. On May 22, 2015, police responded to a 911 call from the divorce attorney's husband. Officers found Perillo and her son, Richard Perillo, hiding in the back of the caller's SUV in Noblesville, Indiana. The Perillos had with them a loaded handgun, binoculars, a plastic bag, latex gloves, a knife, a rubber tourniquet, and a syringe that Perillo claimed contained heroin, but in fact contained a potentially lethal dose of succinylcholine, a paralytic. The police arrested Perillo and her son. They obtained a warrant to search Perillo's car, where they found: ammunition, duct tape, a long blonde wig, two machetes, a tranquilizer gun and darts, alcohol pads, syringes, a "commando" saw, a hammer, a shovel with dirt on it, three license plates, a walking cane, a priest disguise, and a full-headed silicone mask depicting an elderly man's face.

Within forty-eight hours, Trabucco bonded Perillo out of the county jail. Perillo fled west. She was arrested about a month later in Montana. When she was returned to Indiana,

she was placed in a cell with Lisa Starr Ramos. According to the government, Perillo told Ramos about her crimes and that she still wanted to kill attorney Rebecca Eimerman, the person she had been hoping would get into the SUV where she was hiding on May 22 in Noblesville. Ramos contacted the Federal Bureau of Investigation. An agent suggested that Ramos give Perillo the name and telephone number of a hitman named "Don-Don," who was of course an undercover agent. Ramos agreed.

Perillo called "Don-Don" to discuss hiring him to kill Eimerman. She then followed up with a letter describing Eimerman's appearance, vehicle, work address, and daily schedule. She also told "Don-Don" that the murder "should look like spur of the moment," and she suggested that he "intercept her at [the] gym and take her to [the] bank" to make the murder look like a robbery gone wrong.

B. *Guilty Plea*

In November 2015, Perillo was charged with conspiracy to kidnap in violation of 18 U.S.C. § 1201(c); possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c); interstate transportation of a firearm with intent to commit a felony in violation of 18 U.S.C. § 924(b); and commissioning a murder for hire in violation of 18 U.S.C. § 1958. The parties negotiated a plea deal. Perillo agreed to plead guilty to conspiracy to kidnap and commissioning a murder for hire. The government agreed to dismiss the other charges.

Although Perillo pleaded guilty to conspiracy to kidnap, she maintained that her intent was actually to kill her victims. In the plea agreement, Perillo admitted that she drove from

Florida to Nebraska, stopping along the way to pick up her son and to dig a pit that her son said was intended as a grave for Trabucco's ex-wife. When the Perillos could not find Trabucco's ex-wife in Nebraska, they headed to Indiana, intending to kill attorney Eimerman. They brought with them the paralytic and firearm. Perillo also admitted that she later mailed the letter to the supposed hitman saying that she would pay him to kill Eimerman. At Perillo's request, the plea language was edited to state that Ramos actually wrote a portion of the letter but that it was "adopted by Renee Perillo."

The district court held a hearing, engaged in a full Rule 11 colloquy to ensure that Perillo's guilty pleas were knowing and voluntary, and accepted her pleas of guilty to both charges. The court's questioning covered the terms of the plea agreement, including the waiver of Perillo's right to appeal her sentence, which was contingent on her receiving a guideline sentence. The court asked Perillo if she understood the appellate waiver, if she had discussed it with her attorney, and if she was voluntarily waiving her right to appeal. Perillo responded "yes" to all of those questions.

About two weeks after the change of plea, Perillo's daughter wrote a letter to the court saying that Perillo "wants to withdraw her plea because she feels she committed perjury," that she "never wanted to plead guilty," but that she did so because her attorney "pressured her into it." In response, the district court allowed Perillo's initial counsel to withdraw and appointed new counsel. A month later, Perillo's new attorney filed a formal motion to withdraw her guilty plea. The motion asserted that Perillo's first attorney had "coerced and pressured" her into pleading guilty; that "being incarcerated" had put her under "enormous pressure" to plead; that she had

been "baited and entrapped" by Ramos; and that problems with her medication had left her "particularly vulnerable" to Ramos's influence.

The district court held a hearing where Perillo spoke but offered no sworn testimony or other actual evidence. Perillo explained that she felt coerced into pleading by her attorney and that everything she had said at the colloquy "was a lie, and it was perjury." She never asserted that she was actually innocent, but she claimed that the charges against her were incorrect, that she was vulnerable when she spoke with Ramos, and that Ramos and the government "set up" the charges against her.

The district court listened to Perillo's arguments and then reviewed her testimony from the guilty plea hearing. The court noted that she had been under oath in answering the court's questions. The court recited her prior testimony that her mind was clear, that she understood the plea, that she was pleading voluntarily, and that she was satisfied with her attorney. The court then found that Perillo had not presented a "fair and just" reason to withdraw her plea and denied her motion. See Fed. R. Crim. P. 11(d)(2)(B) (allowing withdrawal of plea before sentencing for a "fair and just reason").

C. *Sentencing*

At sentencing, the court heard testimony from the intended victim about her losses. Eimerman estimated that she lost $74,848.71 as a result of Perillo's conduct: $60,000 in lost income after her reaction to this terrifying threat prevented her from working for three months; $2,315.71 for medication and counseling; $2,533 for installation of a home security system; and $10,000 for the estimated value of her SUV, which

she had given away to a family member after the crime. Perillo's counsel objected to paying restitution on the vehicle and argued that the government had not submitted sufficient documentation to support Eimerman's lost income. Perillo did not object to the security system or the medical expenses. The district court ordered the full $74,848.71 in restitution and sentenced Perillo to a total of 324 months in prison, which was a guideline sentence.

II. *Analysis*

On appeal, Perillo challenges the denial of her motion to withdraw her plea and the restitution order. The government argues that the appellate waiver in Perillo's plea covers both claims. We agree. A "voluntary and knowing waiver of an appeal is valid and must be enforced." *United States v. Sakellarion*, 649 F.3d 634, 638 (7th Cir. 2011) (dismissing appeal based on waiver in plea agreement), quoting *United States v. Sines*, 303 F.3d 793, 798 (7th Cir. 2002). Our review of Perillo's appeal is foreclosed if (1) her claims fall within the scope of the appellate waiver and (2) the waiver was valid. *United States v. Alcala*, 678 F.3d 574, 577 (7th Cir. 2012), citing *United States v. Shah*, 665 F.3d 827, 837 (7th Cir. 2011), and *United States v. Cole*, 569 F.3d 774, 776 (7th Cir. 2009). We also noted in *Alcala* that every other circuit that has considered the question has held that a valid waiver of appeal can require dismissal of an appeal of denial of a motion to withdraw a guilty plea. 678 F.3d at 578 & n.1. Because a valid waiver covers both of Perillo's claims, we dismiss her appeal.

A. *Scope of the Waiver*

The first question is whether Perillo's two claims fall within the scope of the appellate waiver. We review the scope

of the waiter *de novo*. See *Alcala*, 678 F.3d at 577 (deciding, as a matter of law, the scope of defendant's waiver). Perillo's plea agreement provided:

> The defendant understands that the defendant has a statutory right to appeal the conviction and sentence imposed and the manner in which the sentence was determined. Acknowledging this right, and in exchange for the concessions made by the Government in this Plea Agreement, the defendant expressly waives the defendant's right to appeal the conviction imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. The defendant further agrees that in the event the Court sentences the defendant to a sentence within the advisory guideline range as determined by the Court, or lower, then the defendant expressly waives the defendant's right to appeal the sentence imposed in this case on any ground, including the right to appeal conferred by 18 U.S.C. § 3742. This waiver of appeal specifically includes all provisions of the guilty plea and sentence imposed, including the length and conditions [of] supervised release and the amount of any fine.

This broad language covers both claims that Perillo raises in this appeal. Perillo has waived her "right to appeal the conviction imposed in this case on any ground." That waiver includes the right to challenge the denial of her motion to withdraw her plea. *United States v. McGuire*, 796 F.3d 712, 715 (7th Cir. 2015) ("When a defendant waives his right to appeal in a

plea, 'he also waives his right to appeal a denial of his motion to withdraw that plea.'"), quoting *Alcala*, 678 F.3d at 578 (holding that "a defendant challenges his conviction when he challenges the district court's denial of his motion to withdraw a plea"). The appellate waiver therefore applies to Perillo's appeal from the denial of her motion to withdraw her plea.

Perillo also waived her right to appeal the restitution order. Perillo's waiver applies to the "right to appeal the sentence imposed in this case on any ground," as long as she received a sentence within the guideline range, and restitution is a part of a sentence. See *United States v. Worden*, 646 F.3d 499, 502 (7th Cir. 2011) ("Because restitution is a part of a criminal sentence, and Worden agreed not to challenge his sentence, he may not appeal the restitution order."), citing *United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000) (noting that an "agreement waiving appeal from 'any sentence within the maximum provided in Title 18' or similar language" would waive right to appeal restitution order). Perillo was not given an above-guideline sentence. And contrary to her arguments, the waiver did not need to refer specifically to restitution in order to apply to the restitution order that was part of the sentence. The waiver included "all provisions of the … sentence imposed." The fact that other specific terms of the sentence were mentioned and restitution was not does not take restitution out from under the "all provisions" umbrella. See *Worden*, 646 F.3d at 502, citing *Behrman*, 235 F.3d at 1052.

### B. *Enforceability*

The next question is whether the appellate waiver in Perillo's plea agreement is enforceable. "It is well settled that a defendant may waive her right to appeal." *McGuire*, 796 F.3d at 715, citing *United States v. Woolley*, 123 F.3d 627, 631 (7th Cir.

1997). We will enforce an appellate waiver "so long as the record clearly demonstrates that it was made knowingly and voluntarily." *Id.*, quoting *United States v. Williams*, 184 F.3d 666, 668 (7th Cir. 1999). To determine whether the plea was knowing and voluntary, we ask "whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." *United States v. Kelly*, 337 F.3d 897, 902 (7th Cir. 2003), quoting *United States v. Mitchell*, 58 F.3d 1221, 1224 (7th Cir. 1995). We review the district court's factual findings, including whether the defendant knowingly and voluntarily entered the plea, for clear error. *United States v. Collins*, 796 F.3d 829, 835 (7th Cir. 2015) (applying clear-error review to factual findings related to knowing and voluntary nature of plea); *United States v. Messino*, 55 F.3d 1241, 1248–49 (7th Cir. 1995) (same).

Perillo's main argument is that she entered the plea agreement before she knew of all available defenses. From this premise, she contends that her plea and the waiver it contains were not knowing and voluntary. She argues on appeal that she has a valid entrapment defense; that she did not learn about it until after she pleaded guilty; and that she presented unrebutted evidence of entrapment to the district court, which should have granted her motion or at least held an evidentiary hearing.[1]

---

[1] The enforceability of a plea agreement typically involves review of the Rule 11 colloquy to ensure that the defendant pleaded guilty voluntarily and that she was properly informed of the charges against her, the rights she was giving up by pleading guilty, and the terms of the plea agreement. Perillo does not argue that her Rule 11 colloquy was defective, only that she lied throughout it. The district judge reviewed the appellate

We start by noting that Perillo did not clearly raise an en-
trapment defense before the district court. Although Perillo
asserted in her motion that she "was baited and entrapped by
Ms. Ramos," she never alleged that she was induced into com-
missioning a murder for hire or that she lacked predisposition
to do it. Instead, Perillo argued that "questionable new
charges" were filed against her based on "unfounded infor-
mation from an unreliable jailhouse source." That is not an
entrapment defense. And when Perillo spoke to the district
judge at the hearing on her motion to withdraw the plea, she
never argued that the government induced her to contact the
hitman. Her main argument was that she felt pressured into
pleading guilty, that her attorney forced her to plead guilty,
and that she lied when she testified otherwise at the Rule 11
colloquy. She did tell the court that medication made her vul-
nerable when Ramos befriended her and that the charges
against her were "set up" between Ramos and the FBI, but
that is as close as she came to arguing entrapment.

Even if Perillo had gone further than she did and had as-
serted the elements of an entrapment defense, that alone
would not have made her plea invalid. Perillo is correct that
she could not knowingly and voluntarily plead unless she
possessed "an understanding of 'the law in relation to the
facts,'" which includes understanding available defenses.
*United States v. Frye*, 738 F.2d 196, 199 (7th Cir. 1984), quoting
*McCarthy v. United States*, 394 U.S. 459, 466 (1969); see also
*United States v. Pineda-Buenaventura*, 622 F.3d 761, 770 (7th Cir.
2010), quoting *United States v. Vonn*, 535 U.S. 55, 62 (2002). A
guilty plea can therefore "be involuntary if the defendant was

waiver with Perillo and asked whether she understood it and voluntarily
waived her right to appeal. Perillo said that she did.

not informed by his lawyer of his defenses to the criminal charges." *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984); see also *Stewart v. Peters*, 958 F.2d 1379, 1381 (7th Cir. 1992) (knowing plea requires that defendant have knowledge necessary to make "a choice among rationally understood probabilities").

At the same time, however, "a plea of guilty does not have to be perfectly informed in order to be voluntary." *Evans*, 742 F.2d at 375; see also *St. Pierre v. Walls*, 297 F.3d 617, 635 (7th Cir. 2002) (finding that "lawyers need not inform their clients of every possible defense, argument, or tactic"). Were the law otherwise, few guilty pleas could survive later challenges based on "buyer's remorse" if a defendant could claim that there was some possible motion or theory her lawyer did not discuss with her first. Perillo did not need to know of every defense theoretically available to the charges against her. She needed to know only the defenses that she could plausibly raise, given the nature of the charges and the evidence against her. Entrapment was not such a defense for Perillo. She has not presented, and could not present, a colorable claim of an entrapment defense that undermines the knowing and voluntary nature of her plea.

Entrapment has two elements: (1) that the government induced the defendant to commit the crime; and (2) that the defendant was not otherwise predisposed to engage in the criminal conduct. *United States v. Mayfield*, 771 F.3d 417, 420 (7th Cir. 2014) (en banc). For obvious reasons, Perillo does not argue that the government entrapped her into driving from Florida to Indiana with a car full of suspicious and dangerous paraphernalia, pausing to prepare an empty grave on the way, stalking Eimerman for several days, and then lying in wait in Eimerman's car with a loaded gun and a potentially lethal

paralytic. Perillo argues only that the government impermissibly induced her to contact a hitman once she was in jail.

Perillo cannot plausibly argue that she lacked a predisposition to commission a murder for hire. By the time she was incarcerated with Ramos, Perillo had already tried to kill Eimerman once. And when Perillo contacted the undercover agent who she believed was a hitman, she did so enthusiastically. Within 11 days of Ramos's suggestion, Perillo called the agent on the phone and wrote a letter providing Eimerman's home address and a vague description of her workplace, describing her physical appearance and her car, and outlining her morning exercise routine. Perillo told the agent that the murder "should look like spur of the moment" and "not planned." She even suggested two *additional* targets for murder, saying that "After Rebecca + her husband the bigger money will come with Pam + Tatianna," Trabucco's ex-wife and the ex-wife's daughter. Perillo finished the letter by telling the agent: "I will be calling you soon to check on our progress, hoorah!" Perillo admitted to sending this letter in her plea agreement. There was not even a colorable entrapment defense here, so Perillo's second thoughts on this basis did not undermine the knowing and voluntary character of her guilty pleas.[2]

One more point merits brief discussion. Perillo argues that *United States v. Groll*, 992 F.2d 755 (7th Cir. 1993), required the

---

[2] Perillo argues that Ramos wrote part of the letter and that she only "adopted" it. This does not affect our analysis. Even if Ramos wrote some of the letter, Perillo did adopt it, and she provided extensive details about her intended victims and called the undercover agent on the phone.

district court to hold an evidentiary hearing on the entrapment defense or to explain why it found the defense implausible. *Groll* is distinguishable in two critical ways. First, the defendant in *Groll* offered record evidence that supported at least a colorable entrapment defense. *Id*. at 759. Perillo has not. Second, the defendant in *Groll* pleaded guilty before "the Supreme Court decision breathing new life into the entrapment defense," so the defendant's entrapment defense did not contradict her testimony in the Rule 11 colloquy. *Id*. at 760, citing *Jacobson v. United States*, 503 U.S. 540, 548–49 (1992). Perillo's attempt to withdraw her plea, by contrast, required her to contradict almost everything she had told the court in the Rule 11 colloquy.

Perillo knowingly and voluntarily waived her right to pursue this appeal. The appeal is DISMISSED.